IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 AUG -9 PM 12: 59

CLERK

BY_____ KP

DEPUTY CLERK

SHAZAD BUKSH;
KRISHNA GATHANI;
GON SAMAN;

      PLAINTIFFS

vs.

DR. WILLIAM SARCHINO DPM FOOT
AND ANKLE SURGEON;

Civil Action
No._____ 2:21-CV-190

WILLIAM SARCHINO;

SOUTHWESTERN VERMONT
MEDICAL CENTER;

**JURY TRIAL DEMANDED**

SOUTHWESTERN VERMONT
HEALTH CARE;

      DEFENDANTS

**COMPLAINT FOR MONETARY AND DECLARATORY RELIEF**

NOW COMES Krishna Gathani, Gon Saman, and Shazad Buksh, (hereinafter

collectively referred to as "**Plaintiffs**") by and through their attorneys, Chadwick & Spensley,

PLLC. and complain against Defendants as follows:

**JURISDICTION**

1. Subject Matter Jurisdiction is proper under Diversity of Jurisdiction as the parties do not

    reside in the same state and Plaintiffs' claims exceed $75,000. 28 U.S.C. § 1332.

1

2. Subject Matter Jurisdiction is proper under 28 U.S.C. § 1331 as the **Plaintiffs** are making claims pursuant to the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq and Act 29 U.S.C. §§ 151-169.

3. Venue is proper as **Plaintiffs'** claims arose while employed by **Defendants** in the state of Vermont. 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Gon Saman, (hereinafter referred to as "**Saman**") currently resides in Tampa, Florida.

5. **Saman** was at all times mentioned herein, a Resident of the Podiatry Residency Program at Southwestern Vermont Medical Center.

6. Plaintiff Krishna Gathani, (hereinafter referred to as "**Gathani**") currently resides in Tampa, Florida.

7. **Gathani** was at all times mentioned herein, a Resident of the Podiatry Residency Program at Southwestern Vermont Medical Center.

8. Plaintiff Shazad Buksh, (hereinafter referred to as "**Buksh**") currently resides in Salem, Oregon.

9. **Buksh** was at all times mentioned herein, a Resident of the Podiatry Residency Program at Southwestern Vermont Medical Center.

10. Defendant William Sarchino, the principal of Dr. William Sarchino DPM Foot and Ankle Surgeon, (hereinafter referred to as "**Sarchino**") was at all times mentioned herein, the Program Director of the Podiatry Residency Program at Southwestern Vermont Medical Center. **Sarchino** is being sued in his individual and official capacities.

11. Defendant Southwestern Vermont Medical Center Inc. (hereinafter referred to as "**SVMC**") is a domestic nonprofit corporation incorporated by the laws of Vermont, with its principal place of business in Bennington County, Vermont.

12. Defendant Southwestern Vermont Health Care Corp. (hereinafter referred to as "**SVHC**") is a domestic nonprofit corporation incorporated by the laws of Vermont, with its principal place of business in Bennington County, Vermont.

13. Defendant **SVMC** is a regional hospital that provides a variety of health care services. **SVMC** operates under **SVHC** with partnerships with surrounding universities and other health care institutions.

14. **SVHC** is involved in the management of the Podiatry Residency program, including but not limited to, financing residents' salaries which are distributed through **SVMC** and issuing policies such as the Harassment and Anti-Discrimination Policy, featured in their Employee Guidebook which is distributed through **SVMC**.

15. Kevin Dailey, (hereinafter referred to as "**Dailey**") was at all times mentioned herein, the Vice President of Human Resources at SVHC.

16. James Poole, (hereinafter referred to as "**Poole**") was at all times mentioned herein, the Assistant Director of the Podiatry Residency Program.

17. Mary Delany, (hereinafter referred to as "**Delany**") was at all times mentioned herein, a Residency Coordinator for the Podiatry Residency Program.

18. Mitch Baroody, (hereinafter referred to as "**Baroody**") was at all times mentioned herein, the Chief Compliance Officer at SVHC.

19. Thomas Dee, (hereinafter referred to as "**Dee**") was at all times mentioned herein, President and CEO of **SVHC**.

20. Sandra Smith, (hereinafter referred to as "**Smith**") was at all times mentioned herein, a Residency Coordinator for the Podiatry Residency Program.

21. Trey Dobson, M.D. (hereinafter referred to as "**Dobson**") was at all times mentioned herein,  the **SVMC** Chief Medical Officer.

22. **Saman**, **Gathani**, and **Buksh** were podiatry residents, responsible for diagnosis and treatment of pathologies of the lower extremities through conservative and surgical interventions for educational purposes.

## NATURE OF ACTION

23. This action is brought by the **Plaintiffs** to recover damages which they suffered and continue to suffer, and to declare unconstitutional, certain actions of **Defendants**, who are healthcare providers, a healthcare facility, and a health system. **Defendants**, acting under color of federal and state law, have subjected **Plaintiffs** to a hostile work environment, retaliatory employment actions, failure to protect whistleblowers, constructive discharge, breach of an implied covenant of good faith and fair dealing, and negligence.

## FACTUAL HISTORY

24. From the beginning of the residency program, **Sarchino** subjected **Plaintiffs** to countless instances of harassment and discrimination related to **Plaintiffs'** ethnicity, race, and religion.

25. **Sarchino** allowed and instigated racist and derogatory comments from patients. **Sarchino** would not only instigate, but laugh at such remarks.

26. **Sarchino** routinely referred to **Plaintiffs** as "you people" and "your kind" and said "brown people are lazy, unmotivated, disrespectful, and insubordinate."

27. **Sarchino** told **Gathani** he looked like a "terrorist" because of his beard and race.

28. **Sarchino** routinely called **Buksh** "old man" and mocked his mental health.

29. **Sarchino** subjected **Plaintiffs** to intrusive questioning regarding race, religion, and culture. These questions were unwelcome and caused **Plaintiffs** to feel extremely uncomfortable in their work environment.

30. **Sarchino** cursed at **Plaintiffs** daily while they were with him on rotation.

31. **Buksh** expressed his discomfort regarding **Sarchino's** discriminatory comments directly to **Sarchino**. **Sarchino** then threatened to kick **Buksh** out of the program.

32. **Sarchino** used his position as a supervisor to threaten **Plaintiffs** with adverse employment actions including, but not limited to, termination of their employment, and the assignment of arduous tasks.

33. **Sarchino** told **Plaintiffs** "I own you" and "I can work you as much as I want."

34. **Sarchino** and **Dailey** often told **Plaintiffs** that their employment was "at will" and if they had complaints about the program, they should resign.

35. **Sarchino** used his position as a supervisor, the head of the Residency Training Committee, and longtime employee of **SVMC** to defame **Plaintiffs'** character to other hospital staff and administration at **SVMC** through false and discriminatory accusations.

36. As a result, **Plaintiffs** lost educational and surgical opportunities with other attending surgeons at **SVMC**.

37. Also as a result, **Plaintiffs** lost credibility in the hospital and lost trust from rotation supervisors.

38. **Sarchino** used his position as a supervisor to routinely take **Plaintiffs** out of surgeries and educational opportunities. Their caucasion co-residents were never subject to such punishments.

39. **Sarchino** ordered **Plaintiffs** to see patients at a local free clinic which the hospital did not have affiliations with, in addition to nursing homes which the hospital did not have affiliations with.

40. **Gathani** expressed his concern about being directed by **Sarchino** to provide care at unauthorized facilities to **Delany**.

41. After **Delany** told **Sarchino** it would be illegal to send residents to these facilities, **Sarchino** berated **Gathani** using the "you people" racial epithet.

42. **Gathani** was subsequently punished for speaking up and kicked out of surgeries by Sarchino.

43. **Gathani's** involvement in surgeries is crucial to his successful completion of the residency program.

44. **Sarchino** confronted **Buksh** after **Buksh** chose to see a patient in the Emergency Room rather than traveling to their home. **Sarchino** aggressively postured himself, causing **Buksh** to fear **Sarchino** may physically harm him.

45. **Buksh** complained to **Poole** regarding **Sarchino's** discrimination, frequent yelling and reprimanding, and concerns regarding being sent to patients' homes.

46. **Poole** told **Buksh** the treatment was just part of training.

47. **Poole** took no action following this meeting.

48. **Sarchino** instructed **Gathani** to dictate a surgery which **Gathani** had not witnessed in its entirety. **Gathani** believed to do so would be fraudulent and expressed concern to **Sarchino** that he believed dictating the surgery would be fraudulent. **Sarchino** again berated **Gathani**.

49. **Gathani** complained to **Smith** after she witnessed **Sarchino** berate him using the "you people" racial epithet. **Smith** expressed that **Sarchino** losing his temper is a repetitive behavior.

50. No corrective action by any of the **Defendants** was taken after the **Smith/Gathani** meeting.

51. **Sarchino** instructed residents, including **Plaintiffs**, to dictate that he was present for consultations when he was not. **Sarchino** threatened residents with termination if they failed to comply with these orders.

52. **Sarchino** ordered residents, including **Plaintiffs**, to bring consultation notes from **SVMC** to his private practice so patients were billed under his name for personal compensation.

53. **Sarchino** instructed residents, including **Plaintiffs**, to send pictures of patient injuries and procedures via his personal cell phone so he could advise procedures while not present.

54. **Sarchino** instructed residents, including **Plaintiffs**, to take hospital supplies from **SVMC** to his private practice. **Sarchino** threatened residents with termination if they failed to comply with these orders.

55. **Saman** reported these actions, which he believed to be fraudulent, to **Dailey** and **Baroody**. **Dailey** and **Baroody** stated they would commence an investigation.

56. **Saman's** report was subsequently dismissed and no findings were published.

57. After **Saman** reported these actions to **Dailey** and **Baroody**, **Sarchino** disallowed **Saman** to scrub podiatry surgical cases, participate in podiatry education, and further threatened **Saman** with termination.

58. Residents, including **Plaintiffs**, were also ordered to take X-Rays at **Sarchino's** private practice, despite being unlicensed, without appropriate protections like lead vests, and without a proper radiation safety plan.

59. Residents, including **Plaintiffs**, were exposed to working conditions that dangerously exposed them to radiation that went unmonitored.

60. Plaintiff **Buksh** made a complaint through VOSHA regarding the unsafe working conditions.

61. VOSHA found **Defendants** in violation and demanded that they complete a number of corrections to the working conditions.

62. Less than one month later, a complaint regarding the same safety issues relating to radiation was made to OPR because **Defendants** continued to place residents, including **Plaintiffs**, in the same unsafe working conditions.

63. **Buksh** now has bladder cancer which, upon information and belief, is a result of his dangerous radiation exposure.

64. **Defendants** continued retaliatory actions and adverse employment decisions after the VOSHA complaints were made.

65. During **Saman's** six month evaluation meeting, **Saman** brought up concerns regarding discriminatory treatment, unrealistic expectations, and a hostile work environment with **Sarchino** and **Dailey**.

66. During the same meeting **Sarchino** called **Saman** a liar and threatened **Saman** with termination.

67. Eight weeks after **Saman's** six month evaluation meeting, **Saman** was given documentation of the meeting minutes that did not include any of the concerns **Saman** had mentioned.

68. When **Saman** requested changes to the documentation to include his concerns prior to signing, **Sarchino** referred to him as "insubordinate."

69. A complaint was brought to **SVMC** and **Baroody** in January of 2020 regarding allegations of fraud, theft, abuse of power, discrimination, violating IRS non-profit laws, HIPPA violations, OSHA violations, intimidation, and ethics violations.

70. After this complaint was filed, **Sarchino** began telling other residency staff that he would be firing two residents.

71. Upon information and belief, the two residents **Sarchino** mentioned, were **Saman** and **Gathani**.

72. After the complaint was filed, **Sarchino** changed the keys to the podiatry office. This limited **Plaintiffs'** ability to utilize resources, such as the library and exposure to clinics and surgeries, necessary to graduate.

73. Also following the complaint, **Dailey** emailed the residents that he would no longer meet with them, denying **Plaintiffs** support from Human Resources.

74. During the February monthly residency training meeting, **Dailey** had assured **Saman** and **Gathani** that he would bring up their concerns of harassment to **Sarchino**, **Poole**, **Dee** and others in attendance at the meeting.

75. Upon information and belief, **Dailey** did not bring up any of their concerns at that meeting.

76. During the same monthly residency training meeting, **Saman** and **Gathani** brought up concerns related to time expectations that were being demanded by **Sarchino**. These time expectations were unrealistic and discriminately placed on **Plaintiffs** but not placed on their caucasian co-residents.

77. Hours later, both **Saman** and **Gathani** received a text message from **Sarchino** ending their exposure to surgical didactics and surgeries which further negatively impacted their ability to graduate from the residency program.

78. When both **Saman** and **Gathani** expressed their concern to **Dailey**, **Dailey's** only response was that this adverse action was taken by **Sarchino** because he was upset.

79. **Gathani** lodged a complaint with both **Poole** and **Dailey**. He expressed frustration and asked for their help.

80. **Dailey** agreed that **Sarchino's** behavior towards **Gathani** was inappropriate. However, no action came after this meeting to address **Gathani's** complaints.

81. During another meeting with **Dailey**, **Dailey** acknowledged that he had yet to speak with **Sarchino** about **Gathani's** concerns. **Gathani** expressed feelings of helplessness to **Dailey**.

82. In response, **Dailey** hinted that **Gathani** should resign. **Dailey** took no further action to address **Gathani's** complaints after this meeting.

83. Following claims reported against **Sarchino**, **Saman's** contract was terminated and **Buksh** was ordered to repeat his second year of the Residency Program without pay.

84. These adverse decisions were made by the Residency Training Committee, headed by **Sarchino**, on March 24, 2020.

85. **Plaintiffs** filed three CPME complaints on April 22, 2020 and April 27, 2020 regarding discrimination, hostile work environment, false punishments, unprofessional conduct, and defamation of character by **Sarchino**.

86. In each CPME complaint, **Plaintiffs** demonstrated that efforts to resolve their complaints through available internal procedures had been exhausted.

87. **Buksh** appealed the Residency Training Committee's decision to order him to repeat his second year, a hearing was held on May 7, 2020.

88. **Sarchino** lied at **Buksh's** appeal meeting, offering discriminatory statements and further defaming **Buksh's** character.

89. **Saman** appealed his termination to the Grievance Committee, a hearing was held on May 11, 2020.

90. **Gathani** testified on behalf of **Saman** at this hearing.

91. **Saman** was reinstated on May 19, 2020.

92. Only days after reinstatement, the Postgraduate Year 2 spots of **Saman** and **Gathani** were posted as available on the national website, which indicated to **Saman** and **Gathani** that their residencies would not be renewed.

93. **Sarchino** also completely denied educational and surgical exposure to **Plaintiffs**.

94. Subsequent to all actions outlined above, Plaintiffs **Saman** and **Gathani** were constructively forced by **Defendants** to resign.

95. On May 20, 2020 **Sarchino** berated **Buksh** in a hallway. **Sarchino** yelled so loudly, nearby staff felt uncomfortable and called **Poole** to intervene.

96. **Sarchino** berated **Buksh** for the "lists and lists" of complaints he had brought forward.

97. **Buksh** reported this interaction to **Dobson** and **Baroody**.

98. No action came after this report.

99. On October 9, 2020, **Sarchino** called **Buksh's** rotation supervisor. **Buksh's** supervisor did not disclose the conversation but stated **Sarchino** "must have a bug on you or something."

100.   The supervisor told **Buksh** that **Sarchino** knew where he was on his day off, despite **Sarchino** being on vacation out of state at the time.

101.   This caused **Buksh** to become afraid for the safety and wellbeing of his family.

102.   Upon his graduation from the program, **Buksh,** who had moved his family to Bennington where he had purchased a home, found it incredibly difficult to find a job and was forced to move across the country to escape **Sarchino's** influence.

103.   **Plaintiffs** have been forced to leave the Northeast region of the country to escape **Sarchino's** influence.

## PLAINTIFF GATHANI'S FIRST CAUSE OF ACTION

104.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

105.   **Defendants** acted in violation of the Civil Rights Act of 1964 §7, 42 U.S.C. §2000e et seq (1964) through the creation of a hostile and abusive work environment.

106.   As a direct and proximate result of **Defendants'** actions referenced above, **Gathani** has and continues to suffer damages.

## PLAINTIFF GATHANI'S SECOND CAUSE OF ACTION

107.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

108.   **Defendants** acted in violation of 21 V.S.A. §507 through their retaliatory actions against **Gathani** who was entitled to Whistleblower protection under 21 V.S.A. §507.

109.   As a direct and proximate result of **Defendants'** actions referenced above, **Gathani** has and continues to suffer damages.

## PLAINTIFF GATHANI'S THIRD CAUSE OF ACTION

110.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

111.   **Defendants** acted in violation of the Civil Rights Act of 1964 §7, 42 U.S.C. §2000e-3 through their retaliatory actions against **Gathani**.

112.   As a direct and proximate result of **Defendants'** actions referenced above, **Gathani** has and continues to suffer damages.

## PLAINTIFF GATHANI'S FOURTH CAUSE OF ACTION

113.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

114.   **Defendants** acted in violation of Act 29 U.S.C. §§ 151-169 through their constructive discharge of **Gathani**.

115.   **Defendants'** actions were unlawful.

116.   As a direct and proximate result of **Defendants'** actions referenced above, **Gathani** has and continues to suffer damages.

## PLAINTIFF GATHANI'S FIFTH CAUSE OF ACTION

117.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

118.    **Defendants** violated community standards of decency, fairness, and reasonableness through the unreasonable discriminatory treatment of **Gathani**.

119.    **Defendants** breached an implied covenant of good faith and fair dealing.

120.    As a direct and proximate result of **Defendants'** actions referenced above, **Gathani** has and continues to suffer damages.

## PLAINTIFF GATHANI'S SIXTH CAUSE OF ACTION

121.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

122.    **Plaintiffs** were forced to work in conditions in violation of 21 V.S.A. §201 which states that "in their employment all persons shall be provided by their employers with safe and healthful working conditions at their work place, and that insofar as practicable an employee shall not experience diminished health… as a result of his or her work experience" and "that practices and procedures prescribed by an employer… shall not be insofar as practicable, dangerous to the life, body, or well being of the employees."

123.    As a direct and proximate result of **Defendants'** actions referenced above, **Gathani** has and continues to suffer damages.

## PLAINTIFF GATHANI'S SEVENTH CAUSE OF ACTION

124.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

125.    **Defendants** breach the standard of ordinary care when they exposed **Gathani** to high levels of radiation without proper protection or monitoring.

126.    As a direct and proximate result of **Defendants'** actions referenced above, **Gathani** has and continues to suffer damages.

**PLAINTIFF SAMAN'S FIRST CAUSE OF ACTION**

127.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

128.    **Defendants** acted in violation of the Civil Rights Act of 1964 §7, 42 U.S.C. §2000e et seq (1964) through the creation of a hostile and abusive work environment.

129.    As a direct and proximate result of **Defendants'** actions referenced above, **Saman** has and continues to suffer damages.

**PLAINTIFF SAMAN'S SECOND CAUSE OF ACTION**

130.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

131.    **Defendants** acted in violation of 21 V.S.A. §507 through their retaliatory actions against **Saman** who was entitled to Whistleblower protection under 21 V.S.A. §507.

132.    As a direct and proximate result of **Defendants'** actions referenced above, **Saman** has and continues to suffer damages.

**PLAINTIFF SAMAN'S THIRD CAUSE OF ACTION**

133.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

134.    **Defendants** acted in violation of the Civil Rights Act of 1964 §7, 42 U.S.C. §2000e-3 through their retaliatory actions against **Saman**.

135.    As a direct and proximate result of **Defendants'** actions referenced above, **Saman** has and continues to suffer damages.

**PLAINTIFF SAMAN'S FOURTH CAUSE OF ACTION**

136.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

137.    **Defendants** acted in violation of Act 29 U.S.C. §§ 151-169 through their constructive discharge of **Saman**.

138.    **Defendants'** actions were unlawful.

139.    As a direct and proximate result of **Defendants'** actions referenced above, **Saman** has and continues to suffer damages.

## PLAINTIFF SAMAN'S FIFTH CAUSE OF ACTION

140.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

141.    **Defendants** violated community standards of decency, fairness, and reasonableness through the unreasonable discriminatory treatment of **Saman**.

142.    **Defendants** breached an implied covenant of good faith and fair dealing.

143.    As a direct and proximate result of **Defendants'** actions referenced above, **Saman** has and continues to suffer damages.

## PLAINTIFF SAMAN'S SIXTH CAUSE OF ACTION

144.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

145.    **Plaintiffs** were forced to work in conditions in violation of 21 V.S.A. §201 which states that "in their employment all persons shall be provided by their employers with safe and healthful working conditions at their work place, and that insofar as practicable an employee shall not experience diminished health… as a result of his or her work

16

experience" and "that practices and procedures prescribed by an employer… shall not be insofar as practicable, dangerous to the life, body, or well being of the employees."

146.   As a direct and proximate result of **Defendants'** actions referenced above, **Saman** has and continues to suffer damages.

## PLAINTIFF SAMAN'S SEVENTH CAUSE OF ACTION

147.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

148.   **Defendants** breach the standard of ordinary care when they exposed **Saman** to high levels of radiation without proper protection or monitoring.

149.   As a direct and proximate result of **Defendants'** actions referenced above, **Saman** has and continues to suffer damages.

## PLAINTIFF BUKSH'S FIRST CAUSE OF ACTION

150.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

151.   **Defendants** acted in violation of the Civil Rights Act of 1964 §7, 42 U.S.C. §2000e et seq (1964) through the creation of a hostile and abusive work environment.

152.   As a direct and proximate result of **Defendants'** actions referenced above, **Buksh** has and continues to suffer damages.

## PLAINTIFF BUKSH'S SECOND CAUSE OF ACTION

153.   **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

154.   **Defendants** acted in violation of 21 V.S.A. §507 through their retaliatory actions against **Buksh** who was entitled to Whistleblower protection under 21 V.S.A. §507.

155.    As a direct and proximate result of **Defendants'** actions referenced above, **Buksh** has and continues to suffer damages.

## PLAINTIFF BUKSH'S THIRD CAUSE OF ACTION

156.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

157.    **Defendants** acted in violation of the Civil Rights Act of 1964 §7, 42 U.S.C. §2000e-3 through their retaliatory actions against **Buksh**.

158.    As a direct and proximate result of **Defendants'** actions referenced above, **Buksh** has and continues to suffer damages.

## PLAINTIFF BUKSH'S FOURTH CAUSE OF ACTION

159.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

160.    **Defendants** violated community standards of decency, fairness, and reasonableness through the unreasonable discriminatory treatment of **Buksh**.

161.    **Defendants** breached an implied covenant of good faith and fair dealing.

162.    As a direct and proximate result of **Defendants'** actions referenced above, **Buksh** has and continues to suffer damages.

## PLAINTIFF BUKSH'S FIFTH CAUSE OF ACTION

163.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

164.    **Plaintiffs** were forced to work in conditions in violation of 21 V.S.A. §201 which states that "in their employment all persons shall be provided by their employers with safe and healthful working conditions at their work place, and that insofar as practicable

an employee shall not experience diminished health… as a result of his or her work experience" and "that practices and procedures prescribed by an employer… shall not be insofar as practicable, dangerous to the life, body, or well being of the employees."

165.    As a direct and proximate result of **Defendants'** actions referenced above, **Buksh** has and continues to suffer damages, including those related to bladder cancer.

## PLAINTIFF BUKSH'S SIXTH CAUSE OF ACTION

166.    **Plaintiffs** hereby reallege and incorporate by reference all prior allegations, as though fully set forth herein.

167.    **Defendants** breach the standard of ordinary care when they exposed **Buksh** to high levels of radiation without proper protection or monitoring.

168.    As a direct and proximate result of **Defendants'** actions referenced above, **Buksh** has and continues to suffer damages, including those related to bladder cancer..

## PRAYER FOR RELIEF

169.    Wherefore, the Plaintiffs request the following relief:

   a.  Compensatory damages as determined by a jury;

   b.  Punitive damages as determined by a jury;

   c.  An order of this Court declaring the above actions of Defendants to be illegal and in violation of Plaintiffs' constitutional, statutory, and common law rights;

   d.  Reasonable attorney's fees and costs;

   e.  Such other and further relief as appears reasonable, necessary, just and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

**SIGNATURE PAGE FOLLOWS**

Dated at Brattleboro, Vermont, this ___9th___ day of August, 2021.

 

Respectfully Submitted,
SHAZAD BUKSH
KRISHNA GATHANI
GON SAMAN

By _____
EVAN CHADWICK, ESQ.
CHADWICK & SPENSLEY, PLLC
136 High Street
Brattleboro, VT 05301
(802) 257-7161
evan@chadwicklawvt.com
Attorney for Plaintiffs