UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SHAZAD BUKSH,                          :
KRISHNA GATHANI,                       :
GON SAMAN,                             :
                                       :
          Plaintiffs,                  :
                                       :
     v.                                :    Case No. 2:21-cv-190
                                       :
DR. WILLIAM SARCHINO DPM FOOT AND      :
ANKLE SURGEON,                         :
WILLIAM SARCHINO,                      :
SOUTHWESTERN VERMONT MEDICAL           :
CENTER,                                :
SOUTHWESTERN VERMONT HEALTH            :
CARE CORP.,                            :
                                       :
          Defendants.                  :

## OPINION AND ORDER

Plaintiffs Shazad Buksh, Krishna Gathani, and Gon Saman together claim that they were discriminated against and subjected to harassment, retaliation, and adverse employment action in violation of state and federal law by Defendants. Defendants Southwestern Vermont Medical Center ("SVMC") and Southwestern Vermont Health Care Corp. ("SVHC") have moved to partially dismiss for failure to state a claim. *See* ECF No. 37. Additionally, Defendant William Sarchino has filed a partial motion to dismiss. *See* ECF No. 41. For the reasons set forth below, SVHC's and SVMC's motion to dismiss is **denied** and Dr. Sarchino's partial motion to **dismiss is granted in part and denied in part**.

## Factual Background

SVMC is a regional hospital that performs a variety of health care services. SVHC is a domestic nonprofit corporation that helps manage the podiatry residency program at SVMC, including issuing SVMC's antidiscrimination and harassment policies and financing the medical residents' annual salaries. Dr. Sarchino was the director of the podiatry residency program at SVMC and the acting head of the Residency Training Committee during the relevant period. Additionally, Dr. Sarchino operates Dr. William Sarchino DPC Foot and Ankle Surgeon, a private medical practice, and a defendant in this case.

Plaintiffs Mr. Buksh, Mr. Gathani, and Mr. Saman were all medical residents in the podiatry program at SVMC. Plaintiffs allege that Defendants subjected them to a hostile work environment, engaged in retaliatory employment actions, were negligent, tortiously interfered with Plaintiffs' employment contracts, constructively discharged Plaintiffs, and breached the implied covenant of good faith and fair dealing, all in violation of federal and state law. Specifically, Plaintiffs allege that "Sarchino subjected Plaintiffs to countless instances of harassment and discrimination related to Plaintiffs' ethnicity, race, and religion." *See* ECF No. 36 at 4. They also allege that among other things, Dr. Sarchino referred to Plaintiffs as "you people," "your kind," and said that "brown

people are lazy, unmotivated, disrespectful, and insubordinate." *Id.* When Mr. Buksh expressed discomfort with Dr. Sarchnio's comments, Dr. Sarchino allegedly threatened to kick him out of the residency program. Plaintiffs also claim that Dr. Sarchino made false statements about them to other hospital employees which resulted in "lost educational and surgical opportunities with other attending surgeons at SVMC." *See* ECF No. 36 at 5.

Plaintiffs also allege that Dr. Sarchino excluded them from surgeries and other educational opportunities, and that he ordered them to treat patients at other organizations, including a free local clinic, with which the hospital did not have any affiliation. Mr. Gathani claims that when he expressed concern about working for a non-affiliate, Dr. Sarchino kicked him out of surgeries.

Additionally, Plaintiffs claim that Dr. Sarchino instructed them to take hospital supplies from SVMC to his private practice. Plaintiffs reported these actions to Kevin Dailey, the Vice President of Human Resources at SVHC and Mitch Baroody, the Chief Compliance Officer at SVHC. According to Mr. Saman, following that complaint, Dr. Sarchino threatened him with termination, and excluded him from podiatry surgical cases and podiatry education.

Plaintiffs also allege that they were forced to take X-Rays without proper protective equipment at Dr. Sarchino's private

practice. Mr. Buksh made a complaint through the Vermont Occupational Safety and Health Administration ("VOSHA"), alleging unsafe working conditions. VOSHA found Defendants in violation of the statute, ordering that a number of changes be made. *See* ECF No. 36 at 8. Additionally, a complaint alleging fraud, theft, abuse of power, as well as Health Insurance Portability and Accountability Act ("HIPAA") violations, Occupational Safety and Health administration ("OSHA") violations, and ethics violations, was brought to SVMC. Plaintiffs claim that after the filing of that complaint, Dr. Sarchino began telling hospital personnel that he would be firing two residents and that he changed the keys to the podiatry office. Mr. Saman and Mr. Gathani also brought up concerns about Dr. Sarchino's behavior in a monthly residency meeting. Mr. Gathani filed a complaint with James Poole, the Assistant Director of the Podiatry Residency Program, and Mr. Dailey. Mr. Gathani claims that Mr. Dailey responded by encouraging him to resign.

On March 24, 2020, the Residency Training Committee, led by Dr. Sarchino, terminated Mr. Saman's contract and ordered Mr. Buksh to repeat his second year of the residency program. Both Mr. Buksh and Mr. Saman appealed these decisions and claim that during subsequent appeal hearings, Dr. Sarchino offered "discriminatory statements" and "defam[ed]" Plaintiffs'

characters. *See* ECF No. 36 at 11. Though Mr. Saman was
eventually reinstated, he claims that he was denied surgical and
educational exposure and was constructively forced to resign.
Mr. Gathani also alleges that Defendants actions constructively
forced him to resign. Mr. Buksh graduated from the program but
claims he continued to be subjected to abuse by Dr. Sarchino and
that after his graduation he "found it incredibly difficult to
find a job and was forced to move across the country to escape
Sarchino's influence." *See* ECF No. 36 at 12.

Plaintiffs filed their First Amended Complaint ("FAC")
against Defendants on December 29, 2021. Within the FAC,
Plaintiffs bring eight causes of action: (1) a violation of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. against Dr.
Sarchino, SVMC, and SVHC for creating a hostile and abusive work
environment; (2) a violation of 21 V.S.A. §507 against Dr.
Sarchino, SVMC, and SVHC for retaliation; (3) a violation of the
Civil Rights Act of 1964 against Dr. Sarchino, SVMC, and SVHC
for retaliation; (4) a violation of community standards of
decency, fairness, and reasonableness against Dr. Sarchino,
SVMC, and SVHC; (5) a violation of 21 V.S.A. §201 for failing to
provide "safe and healthful working conditions" and retaliation
following Plaintiffs' complaints in violation of 21 V.S.A. §231
by Dr. Sarchino, SVMC, and SVHC; (6) a violation of the standard
of ordinary care against Dr. Sarchino; (7) a violation of the

Vermont Fair Employment Practices Act 21 V.S.A. §495(a)(8) against Dr. Sarchino, SVMC, and SVHC for taking discriminatory employment actions; and (8) tortious interference with Plaintiffs' contractual relations with SVMC and SVHC against Dr. Sarchino. Plaintiffs seek compensatory and punitive damages, as well as declaratory relief, and attorney's fees.

Defendants SVMC and SVHC move to dismiss Mr. Gathani's and Mr. Saman's Sixth Cause of Action and Mr. Buksh's Fifth Cause of Action for failure to state a claim. *See* ECF No. 37. Additionally, Dr. Sarchino moves to dismiss all claims against him—arguing that the named statutes do not apply to him as an individual. *See* ECF No. 38.

**Discussion**

## I.   Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim requires factual allegations that permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. On a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Mills v. Polar*

*Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## II.  Defendant SVMC and SVHC's Motion to Dismiss Plaintiffs' VOSHA Claims

Defendants argue that Plaintiffs have failed to state a valid retaliation claim upon which relief can be granted under the VOSHA statute. Under VOSHA, all employees "shall be provided by their employers with safe and healthful working conditions at their workplace, and that insofar as practicable an employee shall not experience diminished health, functional capacity, or life expectancy as a result of his or her work experience[,]" and "practices and procedures prescribed by an employer for performance of work or duties by his or her employees shall not be insofar as practicable, dangerous to the life, body, or well being of the employees." 21 V.S.A. §201(a-b). The statute includes an anti-retaliation provision which protects employees who file complaints under the statute from discharge or other forms of discrimination. 21 V.S.A. §231. To successfully plead a retaliation claim under VOSHA an employee must allege "(1) [he] was engaged in protected activity, (2) the . . . defendant []

knew of that activity, (3) plaintiff suffered adverse employment action, and (4) a causal connection exists between plaintiff's protected activity and the adverse employment action." *Mellin v. Flood Brook Union School Dist.*, 790 A.2d 408, 417-18 (Vt. 2001). "[A]lthough the burden at the *prima facie* stage is minimal, Plaintiff must proffer at least some competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d at 288a.

Defendants argue that Gathani's VOSHA claim fails because he has not alleged that he engaged in protected activity. While Defendants acknowledge that the remaining two Plaintiffs, Mr. Saman and Mr. Buksh, made complaints alleging unsafe working conditions under VOSHA, "nowhere do Plaintiffs allege that SVMC or SVHC knew of the complaints." *See* ECF No. 37 at 4. Additionally, Defendants argue that Mr. Buksh and Mr. Saman failed to identify a specific adverse employment action that they suffered after making the complaints, and that they have not demonstrated a causal connection between any adverse employment action and the protected activity.

### A. Mr. Gathani's VOSHA Claim

Defendants argue that Mr. Gathani's VOSHA claim fails because he has not alleged that he engaged in protected activity. A good faith belief that an employer's actions

8

violated the law is sufficient to meet the protected activity requirement. *See Cole v. Foxmar Inc.*, 387 F. Supp. 3d 370, 383 (D. Vt. 2019) (denying a motion to dismiss under VOSHA where a plaintiff reasonably believed that failing to allow a sick employee to leave without finding a replacement and not providing hand sanitizer did not meet the "safe and healthful working conditions" standard under the statute). Other anti-retaliation statutes have also been interpreted using a "good faith" standard. *See e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (holding that a plaintiff successfully asserts a *prima facie* claim for retaliation under Title VII "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law") (citation omitted); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (holding that a plaintiff may prevail on a claim for retaliation "so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law" under the Americans with Disabilities Act)(internal quotation marks omitted).

Defendants argue that Mr. Gathani's VOSHA claim fails specifically because "nowhere in the FAC do Plaintiffs allege that he engaged in protected activity for purposes of a VOSHA retaliation claim" and that "Plaintiffs do not even allege that

Gathani expressed concerns about unsafe working conditions, let alone that he filed a complaint or instituted a proceeding under VOSHA." *See* ECF No. 37 at 4. The Court disagrees. Mr. Gathani, Mr. Buksh, and Mr. Saman all engaged in protected activity by filing numerous internal complaints about Dr. Sarchino's behavior, and Mr. Buksh, by filing a complaint directly with VOSHA. These complaints are considered protected activity because, based upon the allegations in the FAC, it is clear that at the time of making those complaints, Plaintiffs "had a good faith, reasonable belief that [they] . . . [were] opposing an employment practice made unlawful." *McMenemy v. City of Rochester,* 241 F.3d 279, 285 (2d Cir. 2001); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir. 1988) ("[t]o prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII," but only that he held a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law") (internal quotation marks and citation omitted).

Plaintiffs pleaded many facts that support their good-faith conclusion that they were subjected to unsafe and discriminatory work conditions. In Plaintiffs' FAC, they allege that Dr. Sarchino verbally attacked Mr. Gathani on multiple occasions. *See* ECF No. 36 at 6-7. Plaintiffs claim that Mr. Gathani

reported Dr. Sarchnio's behavior to Sandra Smith, a Residency Coordinator for the Podiatry Residency Program. Plaintiffs also allege that they were forced to take X-Rays without proper protection at Sarchino's private medical practice. *See* ECF No. 36 at 8. Additionally, Plaintiffs filed a complaint alleging fraud, theft, abuse of power, discrimination, intimidation, as well as HIPPA, OSHA, and ethics violations. *See ECF* No. 36 at 9. Following that complaint, Mr. Gathani alleges that he received a message from Dr. Sarchino discontinuing his access to surgeries—thus limiting his educational opportunities and ability to successfully complete the residency program. Additionally, Mr. Gathani claims he lodged a complaint directly with Mr. Poole and Mr. Dailey.

These claims accepted as true, indicate that Mr. Gathani had a good faith belief that Defendants actions violated the law. Mr. Gathani introduced multiple examples in which he was verbally attacked by Dr. Sarchnio and forced to perform tasks outside of his expected work duties. When Mr. Gathani reported these allegations to supervisors together with reports from the two other Plaintiffs, he was excluded from the surgical rotation. Mr. Gathani also claims that he was constructively forced to resign from the residency program following his complaints. The Court concludes that this context establishes a good faith belief that Dr. Sarchino's actions violated the law,

11

and a *prima facie* claim that Mr. Gathani engaged in protected
activity.

**B. Mr. Saman and Mr. Buksh's VOSHA Claims**

Additionally, Defendants argue that Mr. Saman's and Mr.
Buksh's VOSHA claims fail because they have not demonstrated
that SVMC or SVHC knew of the complaints. This argument is not
plausible. Plaintiffs' FAC alleges that they filed an official
complaint through VOSHA, that the VOSHA review board found
Defendants to be in violation of the statute and ordered
Defendants to take a number of corrective actions. Additionally,
Plaintiffs allege that they brought up concerns pertaining to
their work environment on multiple occasions, including directly
with Mary Delany, Residency Coordinator for the Podiatry
Residency Program; Mr. Baroody; Mr. Dailey; and Dr. Sarchino.
The Second Circuit has held that general corporate knowledge is
enough to sustain the knowledge requirement. *See Gordon v. New
York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)
("Neither [the Second Circuit] nor any other circuit has ever
held that, to satisfy the knowledge requirement, anything more
is necessary than general corporate knowledge that the plaintiff
has engaged in a protected activity."); *see also Reed v. A.W.
Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (holding that
a plaintiff's internal complaints about inappropriate comments
made by co-workers was sufficient to satisfy the knowledge

requirement). Given this context, the Court does not see how Defendants could not be aware of Plaintiffs' complaints. The knowledge requirement is therefore met.

Defendants also argue that Mr. Saman's and Mr. Buksh's claims fail because they did not identify any specific adverse employment action that they suffered after making the complaints. For something to be considered adverse employment action, a plaintiff must face a "material adverse change" in the terms of their employment. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices . . . . unique to a particular situation." *See Crady v. Liberty Nat'l Bank and Tr. Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).

In their FAC, Plaintiffs cite multiple instances of adverse employment action, such as being excluded from the podiatry office, curtailed access to surgeries and other educational opportunities, ending Mr. Saman's contract, asking Mr. Buksh to repeat his second year of residency, and constructively forcing Mr. Gathani and Mr. Saman to resign. Plaintiffs do not just rely on vague references to adverse employment action. Instead, all three Plaintiffs point to very specific examples. Furthermore,

13

these allegations constitute material changes to Plaintiffs'
terms of employment, as Mr. Gathani and Mr. Saman ended up
exiting the residency program and Mr. Buksh ended up looking for
employment opportunities outside of the state following his
completion of the program.

Finally, Defendants argue that Mr. Buksh's and Mr. Saman's
VOSHA claims fail because they have not demonstrated a causal
connection "between their complaints and any adverse employment
action." *See* ECF No. 37 at 4. As discussed above, VOSHA has been
interpreted within the context of other anti-retaliation
statutes. In retaliation claims, "[c]ausation can be proven
either: 'indirectly, by showing that the protected activity was
followed closely by discriminatory treatment, or through other
circumstantial evidence such as disparate treatment of fellow
employees who engaged in similar conduct; or (2) directly,
through evidence of retaliatory animus directed against the
plaintiff by the defendant.'" *Galimore*, 641 F. Supp. 2d at 288
(quoting *Gordon*, 232 F.3d at 117). The Second Circuit has noted
that in order to establish a causal connection, a plaintiff must
demonstrate "that the protected activity was closely followed in
time by the adverse [employment] action." *Reed*, 95 F.3d at 1178
(internal quotation marks omitted). In *Galimore*, that court held
that "[b]ecause the record reflects that Plaintiff raised her
concerns about [Defendant's] conduct in early 2000, less than

14

two months before her subsequent receipt of the notification of
termination . . . the Court finds that the time period at issue
in this case is close enough to meet Plaintiff's initial burden
of demonstrating causation." *Galimore*, 641 F. Supp. 2d at 288.
Here, a complaint was brought to SVMC in January 2020 alleging
fraud, abuse of power, discrimination, as well as HIPAA, OSHA,
and ethics violations. Plaintiffs allege that following the
filing of the complaint, Dr. Sarchino began telling residency
staff that he would be firing two residents and that "[u]pon
information and belief, the two residents Sarchino mentioned
were Saman and Gathani." *See* ECF No. 36 at 9.  The FAC alleges
that Mr. Saman was terminated, and Mr. Buksh was asked to repeat
his second year of the Residency Program on March 24, 2020. The
FAC also alleges that around that same time, Mr. Gathani was
encouraged to resign. Given that the threat of adverse
employment action came immediately following the filing of the
complaint, and that the actual adverse employment action was
taken less than three months later, the Court finds that the
factual context in this case is sufficient for a *prima facie*
showing of a causal connection.

### C. Conclusion

The Court finds that all three Plaintiffs have pleaded
facts to sustain a claim for retaliation under the VOSHA
statute. Specifically, Mr. Gathani, Mr. Saman, and Mr. Buksh

have all demonstrated *prima facie* that they engaged in protected activity, that Defendants knew about said protected activity, that they were subject to adverse employment action, and that there was a causal connection between the protected activity and the adverse employment action. The Court therefore denies Defendants' motion to dismiss Mr. Gathani's and Mr. Saman's Sixth Cause of Action, and Mr. Buksh's Fifth Cause of Action.

**III. Defendant Sarchino's Partial Motion to Dismiss Plaintiffs' First Amended Complaint**

In his partial motion to dismiss, Dr. Sarchino argues that all of Plaintiffs' claims in the FAC, with the exception of their Eighth Cause of Action, should be dismissed for failure to state a claim. *See* ECF No. 38. Dr. Sarchino's principal argument is that the relevant statutes do not apply to individual actors. Specifically, Dr. Sarchino moves to dismiss Plaintiffs' First and Third Causes of Action under Title II, claiming that the statute does not allow for individual liability; Plaintiffs' Second Cause of Action, arguing that under the statute, liability can only be found against hospitals; Mr. Gathani's and Mr. Saman's Fifth Cause of Action and Mr. Buksh's Fourth Cause of Action, arguing that Plaintiffs have not established a contractual relationship with Dr. Sarchino; Mr. Gathani's and Mr. Saman's Sixth Cause of Action and Mr. Buksh's Fifth Cause of Action, arguing that Plaintiffs have not pleaded facts to meet

the statute's requirements; Mr. Gathani's and Mr. Saman's
Seventh Cause of Action and Mr. Buksh's Sixth Cause of Action,
arguing that Vermont's Employer's Liability and Workers'
Compensation Act is the exclusive remedy for Plaintiffs' claim;
and Plaintiffs' Ninth Cause of Action, arguing that Dr. Sarchino
is not a distinct party from SVMC and SVHC and therefore cannot
have tortiously interfered with the contractual relationship.
For the reasons outlined below, Dr. Sarchino's partial motion to
dismiss is granted in part and denied in part.

### A. Plaintiffs First and Third Causes of Action

Dr. Sarchino argues that Plaintiffs' First and Third Causes
of Action are legally deficient because Title VII's retaliation
provision does not allow for individual liability. Section
704(a) of Title VII makes it unlawful "for an employer to
discriminate against any . . . employee[] . . . because [that
individual] opposed any practice" prohibited by the statute or
"made a charge, testified, assisted, or participated in" a Title
VII claim or proceeding. 42 U.S.C. § 2000e-3(a). Under the
statute, an employer is considered an entity which employs 15 or
more employees. *Id.* However, Title VII "does not create
liability in individual supervisors and co-workers who are not
the plaintiffs' actual employers." *See Littlejohn v. City of New
York*, 795 F.3d 297, 313 (2d Cir. 2015) (quoting *Raspardo v.
Carlone*, 770 F.3d 97, 113 (2d Cir. 2014)). Furthermore, Title

VII claims against individual defendants in their personal capacity will be dismissed "because under Title VII individual supervisors are not subject to liability." *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (citation omitted).

Plaintiffs cite *Meritor Savings Bank* for the proposition that supervisors can be considered agents of their employer. *See* ECF No. 41 at 6 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 70-72 (1986)). In *Meritor Savings*, the Supreme Court acknowledged that an employer can be held liable for a supervisory employee that is considered an "agent" of the employer. *Id*. It does not, however, make the opposite point—that being an agent of the employer makes the agent individually liable. In fact, case law in the Second Circuit suggests the opposite. *See e.g., Littlejohn*, 795 F.3d at 313. Therefore, the Court grants Dr. Sarchino's motion to dismiss Plaintiffs' First and Third Causes of Action.

**B. Plaintiffs' Second Cause of Action**

Dr. Sarchino next argues that Plaintiffs' Second Cause of Action, which alleges a violation of 21 V.S.A. §507, is deficient because the statute only accounts for liability against hospitals and nursing homes. Under the statute, "[n]o employer shall take retaliatory action against any employee" who engaged in certain protected practices, where "employer" is limited to "hospital" or "nursing home." 21 V.S.A. §507.

"Hospital" is defined as "a place devoted primarily to the maintenance and operation of diagnostic and therapeutic facilities for in-patient medical or surgical care of individuals who have an illness, disease, injury, or physical disability, or for obstetrics." 18 V.S.A. § 1902(1).

Dr. Sarchino's medical practice is an outpatient facility. While patients may come to Dr. Sarchino for inpatient services, like surgery, those services would likely be done on an outpatient basis or performed at a local hospital with inpatient capabilities. As a result, the Court does not find that the Dr. William Sarchino DPM Foot and Ankle Surgeon medical practice constitutes a "hospital" within the meaning of the statute. Vermont courts have indeed held that the statute does not apply to individuals. *See Assur v. Central Vermont Med. Ctr.*, 2012 WL 6951961, at *11 (D. Vt. Dec. 20, 2012) ("as a preliminary matter, the statute, by its terms, applies only to hospitals (such as CVMC) and not individuals . . . ."). Therefore, Dr. Sarchino's motion to dismiss Plaintiffs' Second Cause of Action is granted.

### C. Mr. Gathani and Mr. Saman's Fifth Cause of Action and Mr. Buksh's Fourth Cause of Action

Dr. Sarchino argues that Plaintiffs' implied covenant of good faith and fair dealing claim must be dismissed because there was no underlying contractual relationship between the

parties. "The covenant of good faith and fair dealing is implied in every contract." *See Tanzer v. MyWebGrocer, Inc.,* 203 A.3d 1186, 1198 (Vt. 2018) (citing *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 635 A.2d 1211, 1216 (Vt. 1993). However, "[a] cause of action for breach of the covenant of good faith can arise only upon a showing that there is an underlying contractional relationship between the parties." *Monahan v. GMAC Mortg., Corp.*, 893 A.2d 298, 316 n.5 (Vt. 2005). In this case, the employment contract was formed between the hospital, SVMC and SVHC, and Plaintiffs; it does not extend to Dr. Sarchino. In *Denton v. Chittenden Bank*, the Vermont Supreme Court declined to reach the question of whether an employer had breached the implied covenant of good faith and fair dealing, because it had already found that the supervisor was not legally responsible. 655 A.2d 703, 708 (Vt. 1994). The claim in that case was limited to the employer and not to the individual supervisor, suggesting that a breach of the covenant of good faith and fair dealing can only be found between an employer and an employee, not between a supervisor and an employee.

Additionally, Plaintiffs have not demonstrated "a meeting of the minds: an offer by one of them and an acceptance of such offer by the other" with Dr. Sarchino to make a valid contract. *See Wark v. Zucker*, 256 A.3d 55, 59 (Vt. 2021) (citation omitted). The offer and acceptance of the employment contract,

upon which this claim is based, existed between Plaintiffs and
SVMC and SVHC, the institutions that offered Mr. Buksh, Mr.
Saman, and Mr. Gathani employment, and not between Plaintiffs
and Dr. Sarchino. Furthermore, even if Plaintiffs had
established a contractual relationship between themselves and
Dr. Sarchino, Vermont courts often decline to apply the covenant
of good faith and fair dealing in the employment context. *See*
*Ross v. Times Mirror, Inc.*, 665 A.2d 580, 586 (Vt. 1995)
(declining to extend the implied covenant of good faith and fair
dealing "where the employment relationship is unmodified and at-
will and the employee is challenging the dismissal based on a
right to tenure."). "To imply a covenant as to tenure . . .
irreconcilably conflicts with the employment-at-will doctrine .
. . and results in unreasonable judicial interference into what
is a private relationship. *See id*. Therefore, Dr. Sarchino's
motion to dismiss Plaintiffs' claim for a breach of the implied
covenant of good faith and fair dealing is granted.

### D. **Mr. Gathani and Mr. Saman's Sixth Cause of Action and Mr. Buksh's Fifth Cause of Action**

Next Dr. Sarchino moves to dismiss Mr. Gathani's and Mr.
Saman's Sixth Cause of Action and Mr. Buksh's Fifth Cause of
Action under the VOSHA statute, which prohibits retaliation
against employees who make complaints about their working
conditions. *See* 21 V.S.A. § 231. In doing so, Dr. Sarchino

presents the exact same argument that Defendant SVMC and SVHC
make in their motion to dismiss. *See* ECF No. 37. Specifically,
Dr. Sarchino argues that Mr. Gathani did not engage in protected
activity and that Plaintiffs do not identify any specific
adverse employment action that they faced. The Court has already
found that SVMC's and SVHC's motion to dismiss these claims
should be denied. Given that Dr. Sarchino makes the exact
argument, the Court need not address again why it fails.
Therefore, Dr. Sarchino's motion to dismiss Plaintiffs' VOSHA
claims is denied.

### E. Mr. Gathani and Mr. Saman's Seventh Cause of Action and Mr. Buksh's Sixth Cause of Action

Dr. Sarchino claims that Plaintiffs' negligence claims are
barred by the Workers' Compensation Act, which provides an
exclusive remedy to personal injuries suffered "by accident
arising out of and in the course of employment by an employer
subject to [the Act]." *See* 21 V.S.A. §618(a)(1). "The Act allows
employees to receive workers' compensation for injuries
sustained while working but prevents them from bringing
negligence claims against their employer for their injuries."
*Garger v. Desroches*, 974 A.2d 597, 599 (Vt. 2009) (noting that
while the Act secures efficient recovery for workplace injuries,
it bars suit in tort for that same injury). The Act, however,
"creates an exception to the exclusivity bar: when a compensable

injury is caused under circumstances creating a legal liability
in a person 'other than the employer,' an injured employee may
seek tort recovery from that person." *See id.* (citing 21 V.S.A.
§ 624(a)). In determining whether if a person is considered an
employer

> [t]he key question is whether the negligence occurred
> in the pursuance of the obligation owed the employer
> or whether that negligence occurred in a different
> context, that of a co-employee . . . .[I]t is only
> when an officer or supervisor breaches a personal
> duty, as contrasted to a breach of duty owed primarily
> to the employer, that . . . [the Act] permits a
> recovery from the officer or supervisor as the third
> party defendant.

*See Garrity v. Manning*, 671 A.2d 808, 811 (Vt. 1996) (citing
*Gerger v. Campbell*, 98 Wis. 2d 282, 297 (1980)). The question
thus becomes whether Plaintiffs' injuries occurred by an
employer, "by accident," and in the regular course of business.

However, "'[n]othing short of a specific intent to injure
falls outside the scope of the [Workers' Compensation] Act,'"
and in cases where a "plaintiff alleged willful and wanton
action, not action taken with specific intent to injure, he
could not pursue an alternate, common-law remedy in place of
workers' compensation." *See Martel v. Connor Contracting, Inc.*,
200 A.3d 160, 165 (Vt. 2018) (citing *Kittell v. Vermont
Weatherboard, Inc.*, 417 A.2d 926, 926 (Vt. 1980)). Vermont
courts have held that specific intent can be established by
demonstrating that defendants "had the purpose or desire to

23

cause [plaintiff's] injury . . . [or] they knew with substantial certainty that their actions would bring about his injury." *Martel*, 200 A.3d at 165 (internal quotation marks omitted). This is an undeniably high standard. However, the Court finds that dismissal of this claim is inappropriate at this time.

Plaintiffs claim that Dr. Sarchino forced them to take X-Rays without protective equipment, thus exposing them to high levels of radiation, on numerous occasions. Plaintiffs also allege that Dr. Sarchino continued to engage in this behavior even after he was found to be in violation of the VOSHA statute. Given this context, in addition to other allegations that Dr. Sarchino held animus towards Plaintiffs, a factfinder could find that Dr. Sarchino's actions were taken with either the intent to injure or with substantial knowledge that injury would result. *See e.g.*, *Stamp Tech, Inc. ex rel. Blair v. Ludall/Thermal Acoustical, Inc.*, 987 A.2d 292, 300-01 (Vt. 2009) (holding that summary judgment for the employer was inappropriate under the Workers' Compensation Act because disputed facts remained such as to whether safety equipment existed and whether it had been removed); *see also id.* (noting that "[i]ntent must often be inferred from a party's acts, and where intent is a dispositive issue, courts should exercise caution" in dismissing those claims.). Therefore, at this time the Court declines to hold that Plaintiffs are barred from recovery in tort due to the

Workers' Compensation statute. Dr. Sarchino's motion to dismiss Plaintiffs' negligence claims is denied.

### F. Ninth Cause of Action

Finally, Dr. Sarchino argues that Plaintiffs' Ninth Cause of Action, tortious interference, is insufficient because it is brought against Dr. Sarchino in his capacity as a supervisor and an employee of SVMC, and not as a third party. Under Vermont law, tortious interference is defined as "one who intentionally and improperly interferes with the performance of a contract . . . between another and third person by inducing or otherwise causing the third person not to perform the contract . . . ." *See Williams v. Chittenden Trust Co.,* 484 A.2d 911, 913 (Vt. 1984).

Plaintiffs' claim is that Dr. Sarchino, acting in his individual capacity, interfered with their contractual relationship with the hospital. The question is whether Dr. Sarchino can be considered a third party in this context. Naturally, there are limitations on the definition of a third party. *See Preyer v. Dartmouth Coll.*, 968 F. Supp. 20, 26 (D.N.H. 1997) ("[A] co-employee acting as an agent of [an] employer cannot be a third party for the purposes of interfering with the contract between the plaintiff and [the] employer.") (citation omitted); *Ross*, 665 A.2d at 587 (holding that defendant was not a third party but an employee of the entity

with which plaintiff had a contract); *see also Stone v. Town of Irasburg*, 98 A.3d 769, 769 (Vt. 2014)(holding that town board members were not third parties within a tortious interference claim because they were found to be agents of the town acting within the scope of their employment). An exception to the third-party rule is made by demonstrating actual malice. *See Skaskiw v. Vermont Agency of Agriculture*, 112 A.3d 1277, 1289 (Vt. 2014) (upholding the dismissal of a tortious interference claim because plaintiff did not allege that defendants were acting with actual malice); *see also id*. at 1288 ("[A]ctual malice is defined as bad faith, personal ill will, spite, hostility, or a deliberate intent to harm the plaintiff") (internal quotation marks omitted). An employee can also tortiously interfere with a contract when that employee takes actions outside the scope of his or her employment. *See, e.g., Huff v. Swartz,* 258 Neb. 820, 606 N.W.2d 461, 467-68 (2000) (holding that an employee could be found to have tortiously interfered with the contract of another employee if he acted for his personal benefit and not the benefit of the employer). In *Skaskiw*, that court held that the trial court had correctly dismissed a tortious interference claim because the plaintiff in that case did not "allege that defendants were acting with actual malice or that they were acting outside of the scope of their employment, that is, acting for their own

26

benefit . . ."  *Scaskiw*, 112 A.3d at 1289. The court compared that case with *Preyer v. Dartmouth College*, noting that in *Preyer* "the plaintiff alleged that the defendant had made derogatory racial remarks toward her, preventing her from securing a position with the college; the court found these allegations sufficient to cover the motion to dismiss." *Id.* at 1279-89 (citing *Preyer,* 968 F. Supp. at 26. Here, there is some dispute as to whether Dr. Sarchino did in fact harbor ill will towards Plaintiffs. Plaintiffs allege that Dr. Sarchino operated with hostility and racial animus towards Plaintiffs and that he spread misinformation about Plaintiffs which impacted their employment contract with the hospital. If true, Plaintiffs, like the plaintiff in *Preyer*, have alleged that Dr. Sarchino engaged in discriminatory and derogatory behavior that may have impacted their employment opportunities. This is enough to overcome Dr. Sarchino's motion to dismiss. Accordingly, Dr. Sarchino's motion to dismiss Plaintiffs' Ninth Cause of Action is denied.

## Conclusion

For the reasons set forth above, Defendant SVMC and SVHC motion to dismiss (ECF No. 37) is **denied**, and Defendant Sarchino's partial motion to dismiss (ECF NO. 38) **is granted in part and denied in part**.

DATED at Burlington, in the District of Vermont, this 17th day of August, 2022.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge