UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| SHAZAD BUKSH, | ) | |
| KRISHNA GATHANI, | ) | |
| GON SAMAN, | ) | |
| | ) | |
| PLAINTIFFS; | ) | |
| V. | ) | Case No. 2:21-cv-190 |
| | ) | |
| DR. WILLIAM SARCHINO DPM FOOT AND | ) | |
| ANKLE SURGEON, | ) | |
| WILLIAM SARCHINO, | ) | |
| SOUTHWESTERN VERMONT MEDICAL | ) | |
| CENTER, | ) | |
| SOUTHWESTERN VERMONT HEALTH | ) | |
| CARE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## SOUTHWESTERN VERMONT MEDICAL CENTER AND SOUTHWESTERN VERMONT HEALTH CARE'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Southwestern Vermont Medical Center ("SVMC") and Southwestern Vermont Health

Care ("SVHC") (together, "Defendants" or the "Hospital"), by and through their attorneys,

Downs Rachlin Martin PLLC ("DRM"), answer Plaintiffs' First Amended Complaint ("FAC")

as follows:

1.      The allegations contained in Paragraph 1 of the FAC state a legal conclusion to

which no response is required.

2.      The allegations contained in Paragraph 2 of the FAC state a legal conclusion to

which no response is required.

3.      The allegations contained in Paragraph 3 of the FAC state a legal conclusion to

which no response is required.

4.      The Hospital has insufficient knowledge to form a belief as to the truth of the allegation contained in Paragraph 4 of the FAC and therefore denies it.

5.      The Hospital admits that Plaintiff Saman was a Resident of the SVMC Podiatry Residency Program.[1]

6.      The Hospital has insufficient knowledge to form a belief as to the truth of the allegation contained in Paragraph 6 of the FAC and therefore denies it.

7.      The Hospital admits that Plaintiff Gathani was a Resident of the SVMC Podiatry Residency Program.

8.      The Hospital has insufficient knowledge to form a belief as to the truth of the allegation contained in Paragraph 8 of the FAC and therefore denies it.

9.      The Hospital admits that Plaintiff Buksh was a Resident of the SVMC Podiatry Residency Program.

10.      The Hospital admits that Defendant Dr. William Sarchino was the Program Director of the SVMC Podiatry Residency Program.  The remaining allegation in the FAC contained in Paragraph 10 of the FAC does not require a response.

11.      The Hospital admits that SVMC is a nonprofit corporation incorporated in Vermont with a principal place of business located in Bennington, Vermont.

12.      The Hospital admits that SVHC is a nonprofit corporation incorporated in Vermont with a principal place of business located in Bennington, Vermont.

13.      The Hospital admits the allegations included in Paragraph 13 of the FAC.

---

[1]      SVMC is no longer sponsoring a Podiatry Residency Program.



14.     The Hospital admits that SVHC has issued a Harassment and Anti-Discrimination Policy and that sections of such policy are included in the SVHC Employee Guidebook.  The Hospital further admits that SVMC distributes the SVHC Employee Guidebook to its employees and that the Podiatry Residents' paychecks were distributed through SVMC.

15.     The Hospital admits that Kevin Dailey is the SVHC Vice President of Human Resources.

16.     The Hospital admits that James Poole was the Assistant Director of the Podiatry Residency Program.

17.     The Hospital denies that Mary Delaney was a Residency Coordinator for the Podiatry Residency Program.  Ms. Delaney is a SVMC Medical Staff Coordinator.

18.     The Hospital admits that Mitchell Baroody is the SVHC Chief Compliance Officer ("CCO").

19.     The Hospital admits that Thomas Dee is the President and CEO of SVHC.

20.     The Hospital admits that Sandra Smith was a Residency Coordinator for the Podiatry Residency Program.

21.     The Hospital admits that Trey Dobson, M.D. is SVMC's Chief Medical Officer.

22.     The Hospital only admits that Plaintiffs were podiatry residents, responsible for the diagnosis and treatment of pathologies of the lower extremities through a series of rotations in different specialties as part of the SVMC Podiatry Residency Program.

## NATURE OF ACTION

23.     Denied.

## FACTUAL HISTORY

24.     Denied.

25.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 25 of the FAC and therefore denies them.

26.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 26 of the FAC and therefore denies them.

27.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 27 of the FAC and therefore denies them.

28.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 28 of the FAC and therefore denies them.

29.     The Hospital has insufficient knowledge to form a belief as to how Plaintiffs "felt" in their work environment and therefore denies the allegation in the second sentence in Paragraph 29 of the FAC.  The Hospital denies all remaining allegations in Paragraph 29 of the FAC.

30.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 30 of the FAC and therefore denies them.

31.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 31of the FAC and therefore denies them.

32.     The Hospital only admits that Dr. Sarchino had the authority to assign tasks or to terminate the employment of residents in the Podiatry Residency Program.  The Hospital is without sufficient information to form a belief as to the truth of the allegations regarding threats of adverse employment action and "assignment of arduous tasks" by Dr. Sarchino in Paragraph 32 of the FAC and therefore denies them.

33.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 33 of the FAC and therefore denies them.

Downs
Rachlin
Martin PLLC

34.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 34 of the FAC and therefore denies them. Further, the Hospital only admits that Vice President Dailey reminded employees on occasion that their employments were "at will," and denies the remaining allegations in Paragraph 34 of the FAC.

35.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 35 of the FAC and therefore denies them.

36.     Denied.

37.     Denied.

38.     The Hospital has insufficient knowledge to form a belief as to how "routinely" Plaintiffs were taken out of surgeries, if at all, and therefore denies the allegation in the first sentence in Paragraph 38 of the FAC.  The Hospital denies all remaining allegations in Paragraph 38 of the FAC.

39.     The Hospital only admits that Plaintiff Gathani was offered the opportunity to attend a patient in a local free clinic; however, upon discovery of the Hospital's lack of affiliation with such facility, the offer was removed.  The Hospital denies all remaining allegations in Paragraph 39 of the FAC.

40.     The Hospital only admits that Plaintiff Gathani expressed to Ms. Delany his concern about providing care to a patient in a particular unaffiliated free clinic.

41.     The Hospital denies that Ms. Delaney told Plaintiff Gathani that it would be "illegal to send residents to these facilities."  Upon being informed of his concern by Plaintiff Gathani, Ms. Delaney offered to remind Dr. Sarchino of the lack of affiliation agreement with the free clinic.  As a result, no services were provided by any resident at this particular

unaffiliated free clinic.  The Hospital denies all remaining allegations in Paragraph 41 of the FAC.

42.     Denied.

43.     The Hospital admits the allegations contained in Paragraph 43 of the FAC.

44.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 44 of the FAC and as to how "afraid" Plaintiff Buksh became during the alleged encounter, and therefore denies them.

45.     The Hospital is without sufficient information to form a belief as to the truth of the allegations involving Dr. Poole, and therefore denies them.

46.     The Hospital is without sufficient information to form a belief as to the truth of the allegations involving Dr. Poole, and therefore denies them.

47.     The Hospital is without sufficient information to form a belief as to the truth of the allegations involving Dr. Poole, and therefore denies them.

48.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 48 of the FAC and therefore denies them.

49.     The Hospital denies that Ms. Smith witnessed Dr. Sarchino using the phrase "you people" toward any of the Plaintiffs, including Plaintiff Gathani.  The Hospital denies all remaining allegations in Paragraph 49 of the FAC.

50.     The Hospital is without sufficient information regarding the alleged "meeting" between Ms. Smith and Plaintiff Gathani to form a belief as to the truth of the allegations in Paragraph 50 of the FAC and therefore denies them.

51.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 51 of the FAC and therefore denies them.

52.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 52 of the FAC and therefore denies them.

53.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 53 of the FAC and therefore denies them.

54.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 54 of the FAC and therefore denies them.

55.     The Hospital only admits that one or more of the Plaintiffs reported that they were allegedly instructed to take SVMC supplies to Dr. Sarchino's practice.  The Hospital initiated an investigation regarding this reported activity.  The Hospital has insufficient knowledge to form a belief as to what Plaintiff Saman "believed" and therefore denies this part of the allegation.

56.     The Hospital denies that the reported actions referenced in Paragraph 55 were "dismissed" and admits that no findings regarding the following investigation were "published."

57.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 57 of the FAC and therefore denies them.

58.     The Hospital admits that podiatric residents provided clinical and surgical patient care at affiliated training sites, including the location where Dr. Sarchino operates his private practice, but denies Plaintiffs' characterization of the adequacy of the safety measures applied during those assignments.

59.     Denied.

60.     The Hospital only admits that Plaintiff Buksh made a complaint to the Vermont's Occupational and Health Administration ("VOSHA").

61.     The Hospital only admits that VOSHA required *one* change to the program but denies the characterization of this single change as being the result of any violation.

62.     The Hospital is without sufficient information to form a belief as to the truth of the allegations concerning any complaint made to OPR against the Hospital and therefore denies the allegations contained in Paragraph 62 of the FAC.

63.     The Hospital is without sufficient information to form a belief as to the truth of the allegations regarding the health of Plaintiff Buksh and therefore denies the allegations contained in Paragraph 63 of the FAC.

64.     Denied.

65.     The Hospital only admits that Plaintiff Saman participated in a six-month review meeting where his role expectations were discussed.  Further, the Hospital denies that Plaintiff Saman brought up any claims of discrimination or hostile work environment during this meeting, and thus denies the remaining allegations in Paragraph 65 of the FAC.

66.     Denied.

67.     The Hospital only admits that Plaintiffs refer to a document that speaks for itself.

68.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 68 of the FAC and therefore denies them.

69.     The Hospital only admits that in January 2020 a document containing a variety of complaints was brought to CCO Baroody's attention and that the document speaks for itself. Further, the Hospital denies that any allegation regarding discrimination was included in such complaint and thus denies this allegation in Paragraph 69 of the FAC.

70.     The Hospital is without sufficient information to form a belief as to the truth of what Plaintiffs claim Dr. Sarchino "began telling" other residency staff, and therefore denies the allegations in Paragraph 70 of the FAC.

71.     The Hospital is without sufficient information to form a belief as to the truth of what Plaintiffs "believed" Dr. Sarchino mentioned and therefore denies the allegations contained in Paragraph 71 of the FAC.

72.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 72 of the FAC and therefore denies them.

73.     The Hospital only admits that Plaintiffs refer to a document that speaks for itself. Further, the Hospital's Human Resources department has not denied its support to Plaintiffs related to matters within the purview of this department.

74.     Denied.  At no time during the February 2020 monthly residency training meeting, did Plaintiff Saman or Gathani ever claim harassment because of any protected characteristic.  Furthermore, Vice President Dailey denies making any assurances to Plaintiff Saman or Gathani.

75.     The Hospital only admits that no concerns of harassment based on any protected characteristic were "brought up" during the February 2020 monthly residency training meeting because Vice President Dailey was unaware of any of such concerns.

76.     The Hospital only admits that during the February 2020 monthly residency training meeting, expectations regarding time management and adequate communication were brought to Plaintiffs Saman and Gathani.  The Hospital denies the characterization of these expectations made by Plaintiffs as being unrealistic or discriminatory.

77.     The Hospital only admits that Plaintiffs refer to a document that speaks for itself and denies that a text message was sent "*ending* their exposure to surgical didactics and surgeries."

78.     The Hospital denies that the allegations regarding Vice President Dailey were his "only response."

79.     The Hospital admits that Plaintiff Gathani came to see Vice President Dailey seeking help and demonstrating frustration.  Further, the Hospital is without sufficient information to form a belief as to the truth of the allegations involving Dr. Poole, and therefore denies them.

80.     Denied.

81.     The Hospital admits that Plaintiff Gathani met again with Vice President Dailey and expressed his intent to leave the SVMC Podiatry Residency Program.  During that meeting, Vice President Dailey assured Plaintiff Gathani that he would speak with Dr. Sarchino and asked Plaintiff Gathani to hold off on his decision to leave the program.

82.     Denied.  A few days after the meeting referenced in Paragraph 81, Plaintiff Gathani informed Vice President Dailey that he had decided to leave the SVMC Podiatry Residency Program.

83.     The Hospital admits that Plaintiff Saman's contract was not renewed after his first year of residency but denies the characterization of this decision as being the result of any claims reported against Dr. Sarchino.  Further, the Hospital admits that due to Plaintiff Buksh's unacceptable performance, it was unanimously decided not to promote Plaintiff Buksh to a third year of residency and to offer him the option to repeat his second year of residency.  The Hospital denies that the option offered to Plaintiff Buksh was without pay.

84.     The Hospital admits that the Residency Training Committee met on March 24, 2020 to review the overall performance of SVMC Podiatric Residency Training Program residents.

85.     Upon information and belief, the Hospital understands that one or more residents filed a complaint with CPME, however the Hospital denies the characterization of the alleged events included in such complaint.

86.     The Hospital only admits that Plaintiffs refer to a document that speaks for itself.

87.     The Hospital admits that Plaintiff Buksh appealed the Residency Training Decision, and a hearing was held on May 7, 2020.

88.     Denied.

89.     The Hospital admits that Plaintiff Saman appealed the Residency Training Decision, and that a hearing was held on May 11, 2020.

90.     The Hospital admits that Plaintiff Gathani briefly testified on behalf of Plaintiff Saman during the Grievance Committee hearing held on May 11, 2020.

91.     The Hospital admits that on May 19, 2020 the decision not to advance Plaintiff Saman to his second year of residency was reversed.

92.     The Hospital is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 92 of the FAC and therefore denies them.

93.     Denied.

94.     Denied.

95.     The Hospital is without sufficient information to form a belief as to the truth of the allegations regarding being allegedly "berated" by Dr. Sarchino and therefore denies the first sentence in Paragraph 95.  Furthermore, the Hospital is without sufficient information to form a belief as to the truth of the allegations involving Dr. Poole, and therefore denies them.

96.     The Hospital is without sufficient information to form a belief as to the truth of the allegations against Dr. Sarchino in Paragraph 96 of the FAC and therefore denies them.

97.     The Hospital admits that on May 21, 2020 Plaintiff Buksh reported an alleged encounter with Dr. Sarchino.

98.     Denied.

99.     The Hospital is without sufficient information to form a belief as to the truth of the allegations in Paragraph 99 of the FAC and therefore denies them.

100.    The Hospital is without sufficient information to form a belief as to the truth of the allegations in Paragraph 100 of the FAC and therefore denies them.

101.    The Hospital has insufficient knowledge to form a belief as to how "afraid" Plaintiff Buksh became regarding the wellbeing of his family and therefore denies the allegations in Paragraph 101 of the FAC.

102.    The Hospital has insufficient knowledge to form a belief as to where he had purchased properties or how "incredibly difficult" Plaintiff Buksh "found" the job market following his graduation and therefore denies these allegations in Paragraph 102 of the FAC.

103.    Denied.

## **PLAINTIFF GATHANI'S FIRST CAUSE OF ACTION**

104.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

105.    Denied.

106.    Denied.

### PLAINTIFF GATHANI'S SECOND CAUSE OF ACTION

107.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

108.    Denied.

109.    Denied.

### PLAINTIFF GATHANI'S THIRD CAUSE OF ACTION

110.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

111.    Denied.

112.    Denied.

### ~~PLAINTIFF GATHANI'S FOURTH CAUSE OF ACTION~~[2]

### PLAINTIFF GATHANI'S FIFTH CAUSE OF ACTION

117.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

118.    Denied.

119.    Denied.

120.    Denied.

### PLAINTIFF GATHANI'S SIXTH CAUSE OF ACTION

121.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

---

2       In the FAC, Plaintiffs removed paragraphs 113-116, but left the numbering unchanged.  The Hospital's Answer follows the paragraph numbering used by Plaintiffs, as if no gaps were included in the FAC.

122.     Denied.  Further, the Hospital denies that the citations in Paragraph 122 of the FAC are a complete statement of the law.

123.     Denied.

124.     Denied.

## PLAINTIFF GATHANI'S SEVENTH CAUSE OF ACTION

125.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

126.     No facts are alleged against the Hospital under Paragraph 126, and therefore no response is required.

127.     No facts are alleged against the Hospital under Paragraph 127, and therefore no response is required.

## PLAINTIFF GATHANI'S EIGHTH CAUSE OF ACTION

128.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

129.     Denied.

130.     Denied.

131.     Denied.

## PLAINTIFF GATHANI'S NINTH CAUSE OF ACTION

132.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

133.     The Hospital admits that Plaintiff Gathani entered a Physician Postgraduate Training Agreement with SVMC at his commencement of employment.

134.     No facts are alleged against the Hospital under Paragraph 134, and therefore no response is required.

135.     No facts are alleged against the Hospital under Paragraph 135, and therefore no response is required.

136.     No facts are alleged against the Hospital under Paragraph 136, and therefore no response is required.

## PLAINTIFF SAMAN'S FIRST CAUSE OF ACTION

137.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

138.     Denied.

139.     Denied.

## PLAINTIFF SAMAN'S SECOND CAUSE OF ACTION

140.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

141.     Denied.

142.     Denied.

## PLAINTIFF SAMAN'S THIRD CAUSE OF ACTION

143.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

144.     Denied.

145.     Denied.

**PLAINTIFF SAMAN'S FOURTH CAUSE OF ACTION**[3]

**PLAINTIFF SAMAN'S FIFTH CAUSE OF ACTION**

150.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

151.    Denied.

152.    Denied.

153.    Denied.

**PLAINTIFF SAMAN'S SIXTH CAUSE OF ACTION**

154.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

155.    Denied.  Further, the Hospital denies that the citations in Paragraph 155 of the FAC are a complete statement of the law.

156.    The Hospital is without sufficient information to form a belief as to the truth of the allegation in Paragraph 156 of the FAC and therefore denies them.

157.    Denied.

158.    Denied.

**PLAINTIFF SAMAN'S SEVENTH CAUSE OF ACTION**

159.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

160.    No facts are alleged against the Hospital under Paragraph 160, and therefore no response is required.

---

3    In the FAC, Plaintiffs removed paragraphs 146-149, but left the numbering unchanged.  The Hospital's Answer follows the paragraph numbering used by Plaintiffs, as if no gaps were included in the FAC.



161.     No facts are alleged against the Hospital under Paragraph 161, and therefore no response is required.

## PLAINTIFF SAMAN'S EIGHTH CAUSE OF ACTION

162.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

163.     Denied.

164.     Denied.

165.     Denied.

## PLAINTIFF SAMAN'S NINTH CAUSE OF ACTION

166.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

167.     The Hospital admits that Plaintiff Saman entered a Physician Postgraduate Training Agreement with SVMC at the commencement of his employment.

168.     No facts are alleged against the Hospital under Paragraph 168, and therefore no response is required.

169.     No facts are alleged against the Hospital under Paragraph 169, and therefore no response is required.

170.     No facts are alleged against the Hospital under Paragraph 170, and therefore no response is required.

## PLAINTIFF BUKSH'S FIRST CAUSE OF ACTION

171.     The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

172.     Denied.

173.     Denied.

Downs
Rachlin
Martin PLLC

**PLAINTIFF BUKSH'S SECOND CAUSE OF ACTION**

174.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

175.    Denied.

176.    Denied.

**PLAINTIFF BUKSH'S THIRD CAUSE OF ACTION**

177.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

178.    Denied.

179.    Denied.

**PLAINTIFF BUKSH'S FOURTH CAUSE OF ACTION**

180.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

181.    Denied.

182.    Denied.

183.    Denied.

**PLAINTIFF BUKSH'S FIFTH CAUSE OF ACTION**

184.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

185.    Denied.  Further, the Hospital denies that the citations in Paragraph 185 of the FAC are a complete statement of the law.

186.    The Hospital only admits that Plaintiff Buksh filed a complaint with VOSHA.

187.    Denied.

188.    Denied.

**PLAINTIFF BUKSH'S SIXTH CAUSE OF ACTION**

189.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

190.    No facts are alleged against the Hospital under Paragraph 190, and therefore no response is required.

191.    No facts are alleged against the Hospital under Paragraph 191, and therefore no response is required.

**PLAINTIFF BUKSH'S EIGHTH CAUSE OF ACTION[4]**

192.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

193.    Denied.

194.    Denied.

195.    Denied.

**PLAINTIFF BUKSH'S NINTH CAUSE OF ACTION**

196.    The Hospital incorporates by reference its responses to each and every allegation numbered above as if fully set forth herein.

197.    The Hospital admits that Plaintiff Buksh entered a Physician Postgraduate Training Agreement with SVMC at the commencement of his employment.

198.    No facts are alleged against the Hospital under Paragraph 198, and therefore no response is required.

---

[4]     The FAC omitted a Seventh Cause of Action for Plaintiff Buksh.  The Hospital references the same title used by Plaintiffs in their responses as if Plaintiff Buksh's Seventh Cause of Action was included.



199.     No facts are alleged against the Hospital under Paragraph 199, and therefore no response is required.

200.     No facts are alleged against the Hospital under Paragraph 200, and therefore no response is required.

## PRAYER FOR RELIEF

201.     The Hospital denies the allegations and requests for relief contained in Paragraph 201 of the FAC.

## GENERAL DENIAL

Any allegations that are not specifically admitted by the Hospital are denied.  The Hospital denies all subject headings and titles contained in Plaintiffs' FAC.  The Hospital further denies that Plaintiffs are entitled to any relief.  Judgment should be entered for Defendants.

## AFFIRMATIVE DEFENSES

1.     Some or all of Plaintiffs' claims fail to state a claim upon which relief may be granted.

2.     Plaintiffs' claims are barred, in whole or in part, because there are legitimate and non-discriminatory reasons for employment actions taken that are alleged to have adversely affected Plaintiffs.

3.     Plaintiffs' alleged damages, if any, were caused by their own actions or the actions of a party not under control of the Hospital.

4.     Plaintiffs' alleged damages, if any, are barred in whole or in part by their failure to mitigate damages, if any.

5.     Some or all of Plaintiffs' claims are barred by the doctrine of unclean hands.

6.     The Hospital is not responsible for any losses attributable to pre-existing injuries or medical conditions of Defendants.

7.     The Hospital is not responsible for any losses caused by subsequent accidents, injuries, or events.

8.     The Hospital alleges all affirmative defenses contemplated by Rules 8 and 12. F.R.C.P., and reserve the right to assert additional defenses as discovery and investigation continues.

## **COUNTERCLAIMS AGAINST PLAINTIFF BUKSH**

Pursuant to Federal Rules of Civil Procedure 7(a)(2) and 13(b), Defendants Southwestern Vermont Medical Center ("SVMC") and Southwestern Vermont Health Care ("SVHC") hereby counterclaim against Plaintiff Shazad Buksh as follows:

1.     This Court has jurisdiction over Defendants' counterclaims pursuant to its diversity jurisdiction under 28 U.S.C. § 1332.  (See Complaint, ¶¶ 1, 4-12).

2.     SVMC is a regional hospital located in Bennington, Vermont that provides a wide range of inpatient and outpatient services.  SVHC is the parent corporation of SVMC.

3.     Plaintiff Buksh is a former SVMC employee and Resident in SVMC's Podiatry Residency Program.  His duties included the diagnosis and treatment of pathologies of the lower extremities.

4.     To carry out his duties, Buksh had access to confidential information and data, including patient medical records.

5.     Such information is privileged and highly protected under both Vermont and federal law, and the Defendants owe a duty to patients to ensure that such information is not improperly disclosed.

6.      Employees such as Buksh are legally and ethically bound to use confidential information only for proper purposes as necessary to carry out their duties, and to keep such information secure.

7.      Illustrating the importance of protecting such confidential information, on June 26, 2018, Buksh and SVHC executed a Confidentiality and Non-Disclosure Agreement ("Agreement") concerning the confidential information that Buksh would have access to during the course of his employment.  (See Exhibit 1).

8.      By its terms, the Agreement was "essential to [Buksh's] service arrangement with SVHC," and compliance with his duties under the Agreement was "an essential condition of [his] relationship to SVHC."

9.      Under the Agreement, Confidential Information includes, but is not limited to, medical records.

10.      By signing the Agreement, Buksh promised, among other things, to: "use Confidential Information for the exclusive and limited purpose of performing [his] position"; to "not disclose any Confidential Information to any person or entity whatsoever, except in direct connection with the performance of [his] duties"; to "not in any way copy or reproduce, or permit any other person to copy or reproduce, in whole or in part, any Confidential Information other than in the regular course of the services [he was] authorized and directed to perform for SVHC"; to "strictly comply with all SVHC policies regarding the security of Confidential Information"; to report "any unauthorized use, duplication, disclosure, or dissemination of Confidential Information"; and that, upon the termination of his relationship with SVHC, he would "immediately return all property of Southwestern Vermont Healthcare or other media containing any Confidential Information to SVHC."  Buksh further promised not to "seek

personal benefit . . . by any Confidential Information" that he accessed, and represented that he understood "that all Confidential Information . . . is the property of SVHC and shall not be used inappropriately for personal gain."

11.     Further emphasizing the gravity of Buksh's duties under the Agreement, by signing the Agreement, Buksh agreed that all of his obligations under the Agreement would survive the termination of his relationship with SVHC.  Buksh also represented that he understood that he could be subject to criminal or civil penalties for breach of confidential information.

12.     Despite having clear and unambiguous notice of his duty to protect Confidential Information, in the final weeks of his employment, Buksh intentionally took repeated actions which violated the Agreement and compromised the security of private patient information.

13.     In June of 2021 – the final month of his employment at SVMC – Buksh requested assistance with accessing electronic patient records from SVMC's information technology staff. SVMC's information technology staff believed that Buksh sought to access these records for legitimate reasons related to his employment.

14.     After receiving the assistance he requested, over a period of approximately two weeks, Buksh sent at least twenty emails containing confidential medical records from his SVMC email address to his personal Gmail address.  The following are some of the records that were included in the emails:

A.     patient x-rays containing personal identifying information;

B.     full patient summaries;

C.     a Microsoft Excel document listing over 10,000 patient records;

D.     a listing containing patient names and other identifying information;

E.     logs related to patients that Buksh observed and treated while at SVMC.

15.     Buksh sent the last of these emails on June 29, 2021 – just one day before his employment with SVMC concluded.

16.     Together, the emails Buksh sent contain an alarming array of personal information about patients, including names, dates of birth, medical record numbers, dates of care, and information about the care received.

17.     Thus far, Defendants have identified more than 300 hundred individuals whose personal information has been compromised by Buksh's intentional breach of confidentiality. Through their agents, Defendants have contacted the affected individuals, and several have responded seeking additional information and expressing concern about the security of their information.

18.     Underscoring the significance of the breach and Defendants' concern about the exposure of confidential patient information, SVMC reported the breach to the Vermont Attorney General's Office and included the breach in its annual report to the Vermont Office of Professional Regulation.

19.     Upon information and belief, the records Buksh sent remain on his personal Gmail address, where they are at significant risk of further exposure.[5]  Defendant also downloaded the confidential files to his personal computer.

---

[5]     Defendants' internal investigation of Buksh's activity demonstrates the risk of exposure.  In reviewing the emails Buksh sent from his SVMC email to his personal Gmail account, Defendants discovered that he had password-protected some of the files he had attached.  However, Defendants' information security team was able to easily bypass the passwords and view the confidential information.



20. Due to Buksh's unlawful actions, Defendants have suffered and continue to suffer significant damages. Already, Defendants have suffered the following harm:[6]

    A.     being forced to make a claim with their cyber-security liability insurance carrier, which carries a deductible of several thousand dollars;

    B.     senior officials for Defendants, including a Vice President of Information Security, Cyber Security Engineer, Corporate Compliance Officer, and several others, have been forced to spend hundreds of hours reviewing, investigating, and mitigating Buksh's intentional breach and ensuring that affected individuals have been notified, as required by the federal Health Insurance Portability and Accountability Act;

    C.     reputational harm and loss of goodwill, as hundreds of Defendants' patients have been informed that their private health information has been exposed; as stated above, several patients have already expressed concern about the breach, and have requested additional information and documentation.

21. Moreover, Defendants are threatened with the possibility of immense additional harm. For example, the reputational harm to them could increase exponentially should affected patients seek to draw more attention to Buksh's unlawful actions, such as by posting about them on social media. Defendants also face the possibility of lawsuits by affected individuals, or enforcement actions and fines by federal and state authorities.

---

[6]     The actual and potential harms set forth in paragraphs 19 and 20 are not intended to be exhaustive. Defendants continue to investigate this matter, and reserve the right to assert additional harms as they learn additional facts.



22.     In addition, the threat of future harm remains significant so long as the confidential information appropriated by Buksh remains on his Gmail account and personal computer, and thus at risk of further exposure.

## COUNT I

### Breach of Contract

23.     Defendants reallege and incorporate ¶¶ 1-22 above.

24.     The Confidentiality and Non-Disclosure Agreement is a contract between Buksh and SVHC.

25.     Buksh breached that contract by repeatedly sending Confidential Information that is the property of SVHC to his personal Gmail address, and downloading that information to his personal computer.

26.     Buksh continues to breach that contract by failing to return all Confidential Information that he appropriated to SVHC.

27.     As a result of Buksh's breach, SVHC has suffered financial harm in the form of costs incurred and loss of goodwill, and faces the risk of additional damages going forward.

## COUNT II

### Conversion

28.     Defendants reallege and incorporate ¶¶ 1-27 above.

29.     The Confidential Information Buksh sent to his personal Gmail address, and downloaded to his personal computer, is the property of SVHC.

30.     By, in effect, copying and taking Defendants' property, Buksh has appropriated that property to his own use and beneficial enjoyment, has exercised dominion over that property in exclusion and defiance of SVHC's right, and/or has withheld possession from SVHC under a claim of title inconsistent with SVHC's.

31.     As a result of Buksh's unlawful appropriation of its property, SVHC has suffered financial harm in the form of costs incurred and loss of goodwill, and faces the risk of additional damages going forward.

## COUNT III

## Breach of the Duty of Loyalty

32.     Defendants reallege and incorporate ¶¶ 1-31 above.

33.     As an employee of SVMC, Buksh owed a duty of loyalty to SVMC.

34.     That duty of loyalty included a duty not to use or disclose information imparted to him by SVMC that Buksh knew or had reason to know was confidential.

35.     Buksh's duty not to use or disclose such confidential information remains in effect, even though he is no longer employed by SVMC.

36.     Buksh knew, or, at the very least, should have known, that the patient information he sent to his personal Gmail address, and downloaded to his personal computer, is confidential.

37.     By appropriating that information, apparently for his own use and personal benefit, Buksh violated his duty of loyalty to SVMC.

38.     As a result of Buksh's breach of his duty of loyalty, SVMC has suffered financial harm in the form of costs incurred and loss of goodwill, and faces the risk of additional damages going forward.

## COUNT IV

## Violations of the Vermont Computer Crimes Statute, 13 V.S.A. §§ 4101-4107

39.     Defendants reallege and incorporate ¶¶ 1-38 above.

40.     Buksh knowingly and intentionally, and without lawful authority, accessed data – namely, patient medical information – in a computer, computer system, computer program, and/or computer network owned by Defendants.

41.     In addition, Buksh intentionally, and without claim of right, deprived Defendants of possession, took, transferred, copied, and/or retained possession of that same data, which was contained in a computer, computer system, computer program, and/or or computer network owned by Defendants.

42.     As a result of Buksh's repeated statutory violations, Defendants have suffered financial harm in the form of costs incurred and loss of goodwill, and face the risk of additional damages going forward.

43.     Unless Buksh is immediately enjoined from continuing his unlawful appropriation of Defendants' property, both Defendants and the patients whose information has been compromised are at risk of substantial, irreparable harm.

44.     Defendants are likely to succeed on the merits of all of their counterclaims.

45.     The balance of equities and the public interest weigh in favor of immediately enjoining Buksh from continuing his unlawful appropriation of confidential patient information.

WHEREFORE, Defendants demand judgment:

I.      Granting Defendants a Preliminary and Permanent Injunction:

A.      enjoining Buksh from taking any action to further expose or disclose the confidential information he has unlawfully appropriated;

B.      enjoining Buksh from using the confidential information in any manner, whether for his personal benefit or otherwise;

C.      directing Buksh to securely return all confidential information that he has unlawfully appropriated to SVHC, and to take all necessary steps to ensure that the information is no longer at risk of additional disclosure.  Such steps may include, but are not necessarily limited to, retaining qualified

information technology professionals to ensure that all confidential

information has been deleted from his personal computer and Gmail

account in a manner which ensures that the information is no longer

accessible to third parties.

II.     Awarding Defendants compensatory, punitive, and exemplary damages in an

amount to be proven at trial.

III.    Awarding Defendants their attorney's fees and costs.

IV.     Granting such other and further relief, whether in law or equity, as this Court

deems just and appropriate.

Dated at Brattleboro, Vermont this 31st day of August, 2022.

DOWNS RACHLIN MARTIN PLLC


By   /s/ Timothy E. Copeland, Jr.
     Timothy E. Copeland, Jr., Esq.
     Brendan T. Sage, Esq.
     132 Main Street, Suite 212
     Brattleboro, VT  05301
     Telephone:  (802) 258-3070
     Email:  tcopeland@drm.com
     Email:  bsage@drm.com

     ATTORNEYS FOR DEFENDANTS
     SOUTHWESTERN VERMONT MEDICAL
     CENTER AND SOUTHWESTERN
     VERMONT HEALTH CARE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31st, 2022, the foregoing document was filed using the CM/ECF system which will send notification of such filing(s) to the Counsels of record, to whom a copy of the document was also emailed:

Evan Chadwick, Esq. – evan@chadwicklawvt.com – Plaintiffs' Counsel

David M. Pocius, Esq. – dpocius@pfclaw.com – Dr. William Sarchino's Counsel


By   /s/ Timothy E. Copeland, Jr.
    Timothy E. Copeland, Jr., Esq.
    Brendan T. Sage, Esq.
    132 Main Street, Suite 212
    Brattleboro, VT  05301
    Telephone:  (802) 258-3070
    Email:  tcopeland@drm.com
    Email:  bsage@drm.com

20966757.4

Downs
Rachlin
Martin PLLC