```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT

Shazad Buksh, Krishna          )
Gathani, Gon Saman,            )
                               )
      Plaintiffs,              )
                               )
           v.                  )    Case No. 2:21-cv-190
                               )
Dr. William Sarchino DPM       )
Foot and Ankle Surgeon,        )
William Sarchino,              )
Southwestern Vermont Medical   )
Center, Southwestern Vermont   )
Health Care,                   )
                               )
      Defendants.              )
```

## OPINION AND ORDER

Pending before the Court is a motion for leave to amend the Amended Complaint, filed by Plaintiffs Shazad Buksh and Krishna Gathani. The Second Amended Complaint would add an abuse of process claim, alleging that Defendants Southwestern Vermont Medical Center and Southwestern Vermont Health Care improperly objected to certain discovery requests in a purposeful attempt to facilitate Buksh's federal criminal prosecution, and thus gain an advantage in this civil action. Defendants argue that their discovery objections were appropriate, that Buksh's proposed claim involves significant speculation, and that the alleged misconduct did not result in any harm.

For the reasons set forth below, the motion to amend is granted.

**Factual Background**

Plaintiffs filed their initial Complaint in this case on August 9, 2021, and subsequently filed an Amended Complaint. Their claims center on allegations of discrimination and retaliation in the workplace. On August 31, 2022, Defendants Southwestern Vermont Medical Center ("SVMC") and Southwestern Vermont Health Care (collectively "Defendants") filed an Answer and Counterclaim. The Counterclaim is brought solely against Plaintiff Buksh, alleging that while Buksh was employed at SVMC he sent emails containing confidential patient medical records from his SVMC email address to his personal Gmail address. ECF No. 45 at 23. Those records reportedly included patient x-rays, a Microsoft Excel document listing over 10,000 patient records, and logs related to patients Buksh observed and treated while at SVMC. *Id.* at 24. The Counterclaim alleges, among other things, violation of the Vermont Computer Crimes Statute, 13 V.S.A. §§ 4101-4107 (Count IV).

On May 4, 2023, Buksh served a first set of interrogatories and request for production of documents asking, in part, whether Defendants "or any agent thereof, reported the allegations contained in Count IV of the [] counterclaim to any local, county, state, or federal police or law enforcement agency." ECF No. 102-4 at 3. He also asked for the names of any agencies, officers, or investigators involved, and any documents

exchanged with those agencies. *Id.* at 4. On July 19, 2023, Defendants objected to Buksh's requests as irrelevant to their counterclaim. ECF No. 102-5 at 3. Notwithstanding those objections, Defendants produced documents showing that SVMC had reported a potential security breach to the Vermont Attorney General's Office. ECF No. 102-6. The correspondence to the Attorney General's Office stated that SVMC was investigating the possible breach and "cooperating with law enforcement." *Id.* at 3. SVMC also produced a report to the U.S. Department of Health and Human Services. Buksh sought no further discovery on those issues at that time.

In an email dated October 27, 2023, Google notified Buksh that it had "received and responded to a legal process issued by the United States Department of Justice (DOJ) compelling the release of information related to [his] Google account." ECF No. 101-4 at 1. The email further stated that "[a] court order previously prohibited Google from notifying [him] of the legal process." *Id.* Buksh also obtained a copy of a grand jury subpoena issued to Google. ECF No. 101-5 at 1. He reportedly became aware of the Google email when he found it in his spam folder on January 7, 2024. ECF No. 101 at 2.

Buksh subsequently retained criminal defense attorney David Sleigh. On January 23, 2024, Attorney Sleigh contacted the United States Attorney's Office for the District of Vermont

3

asking for further information about the Google subpoena. ECF No. 101-6 at 1. The government's response explained that "[a]round the time of the subpoena, the United States and the grand jury had opened an investigation of possible crimes related to medical records. Since the time of the subpoena, the government has closed the investigation." *Id.* The response also stated that "[t]his information should not be interpreted as a promise by the United States concerning potential prosecution or investigation of any criminal conduct by your client." *Id.*

On January 31, 2024, Buksh's counsel emailed counsel for SVMC stating that he had recently learned of the grand jury investigation. ECF No. 101-7. Counsel requested the identity of the person who had referred the criminal charges, as well as all related communications. Counsel further advised that "[u]ntil this situation can be better understood, at a minimum Dr. Buksh will not be answering any deposition questions on the counterclaim." *Id.* at 3. Buksh subsequently moved for a protective order, asking the Court to (1) prevent deposition questioning about the counterclaim "until we have more info about the referral" to the federal government, and (2) bar any party from claiming waiver of Buksh's Fifth Amendment privilege based on questions answered at the deposition. ECF No. 101 at 3. The Court denied the motion, concluding that "the proper

procedure is for [Buksh] to attend his deposition and assert his Fifth Amendment rights on a question-by-question basis." ECF No. 109 at 10.

The motion before the Court alleges that by failing to disclose in their discovery responses that they had reported Buksh for federal prosecution, Defendants were acting in bad faith in an effort to "lure" him into discussing incriminating matters without invoking his Fifth Amendment rights. ECF No. 105 at 3. He further contends that "[g]iven defendants' scheme, it is likely that plaintiff Buksh's deposition would have been provided to USA to reopen the criminal case." *Id.* at 4. "This scheme would have provided defendants with the opportunity to leverage this case through the intimidation of a plaintiff who by virtue of his ethnicity and membership in protected classes was particularly vulnerable to heavy-handed criminal prosecution." *Id.* at 6. With respect to damages, Buksh claims that he experienced anxiety after discovering the fact of a grand jury investigation and Defendants' possible scheme, and economic harm "by having, for example, to hire a criminal defense attorney." ECF No. 120 at 9.

## Discussion

### I. Legal Standards

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so

5

requires."  The Second Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and ... prejudice to the opposing party."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (internal quotation marks omitted).  An amendment is futile if it results in a claim that cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Ger.*, 615 F.3d 97, 99 (2d Cir. 2010) (holding that "leave to amend would be futile" when the amended complaint fails to "provid[e] a basis for subject matter jurisdiction").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff."  *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  This standard requires that the factual allegations "be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Parties opposing a motion to amend bear the burden of establishing that an amendment would be futile. *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998).

## II. Leave to Amend

Buksh seeks to add a claim for abuse of process. Under Vermont law, a plaintiff asserting abuse of process must "plead and prove: 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff. These elements are separate and distinct." *Jacobsen v. Garzo*, 149 Vt. 205, 208 (1988). The proposed claim here centers on Defendants' interrogatory responses and their alleged failure to disclose that, according to Buksh, they communicated with federal prosecutors or law enforcement. Applying Vermont's abuse of process standard, the first question is whether discovery responses constitute "court process." *Id.*

Courts across the country appear to be divided on that question, with some holding that rather than an abuse of process claim, the more appropriate remedy is a discovery sanction. *See, e.g., Leighton v. Lowenberg*, 2023 ME 14, ¶ 18 (holding that the "refusal to properly respond to [the opposing party's] discovery requests — although sanctionable — is not actionable"); *Watters v. Dinn*, 633 N.E.2d 280, 289 (Ind. Ct. App. 1994) (noting that the "normal recourse against a party who

7

abuses the discovery process is to seek sanctions in the trial court," and that while a party's failure to comply with the trial rules may be sanctionable, it does not in itself constitute a tortious abuse of process).  At least two federal circuit courts, however, have listed discovery violations as a basis for alleging abuse of process.  *See Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 311 (3d Cir. 2003) (reversing dismissal of abuse of process claim where counsel "knowingly made bogus claims of privilege in response to discovery requests, hid documents, and made misrepresentations to opposing counsel and the court"); *Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995) ("Typical abuse of process cases involve misuse of such procedures as discovery.").  The Court will follow these latter authorities and hold that, when supported by the other elements of an abuse of process claim, improper conduct in discovery can subject a party to such a claim.[1]

To present a non-frivolous claim, Buksh must also plausibly allege an ulterior motive or purpose.  *Jacobsen*, 149 Vt. at 208.  The allegation is that Defendants withheld certain discovery in order to increase the likelihood of Buksh's federal prosecution.

---

[1] Defendants claim support from *Long v. Parry*, in which this Court merely noted that "Dr. Long has failed to establish that a breach of the civil discovery rules alone qualifies as an improper use of court process."  No. 2:12-CV-81, 2016 WL 814861, at *24 (D. Vt. Feb. 29, 2016), *aff'd*, 679 F. App'x 60 (2d Cir. 2017).

Although Buksh was aware for many months that he might be prosecuted for a state law misdemeanor under Vermont's Computer Crimes Statute, he asserts that he viewed the likelihood of prosecution as "remote." ECF No. 105 at 3. He also claims that, without any notice of the federal prosecution prior to his deposition, he likely would have testified without asserting a Fifth Amendment privilege. Such testimony, he claims, could have been used in a criminal prosecution, and would also have provided Defendants new leverage in this civil case.

Defendants argue that Buksh's claim is highly speculative and therefore fails to present a plausible claim. Specifically, they argue that the allegations assume (1) a scheme to "lure" Buksh into giving incriminating testimony, (2) that the U.S. Attorney would then re-open the criminal investigation, and (3) that Buksh would ultimately be prosecuted for federal crimes, including felonies. Buksh counters that the report to federal law enforcement, and the failure to disclose such report, involves no speculation.

As with a motion to dismiss, a court considering a motion to amend a complaint must accept the facts alleged as true and make all reasonable inferences in favor of the party seeking to amend. *Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 258 (E.D.N.Y. 1999). Whether the facts alleged here allow for an inference of a nefarious scheme is a close question. The Court previously

9

determined that Defendants' objection to Buksh's discovery request was justified, as the reports to government officials had little to do with claims that Buksh himself had wrongfully exposed patient data. Nonetheless, it is reasonable to infer that Defendants, based upon their own alleged actions, knew of the potential for a federal felony prosecution and that Buksh was at risk of waiving his Fifth Amendment rights. Whether Defendants hid the fact of any federal reporting in their discovery responses, as well as in their Counterclaim allegations,[2] in an effort to obtain an advantage in this litigation, remains to be proven. For present purposes however, particularly given the liberal standard for amending pleadings, the Court will infer an ulterior motive or purpose.

The final element for an abuse of process claim is damages. Defendants contend that no damages arose from any alleged discovery misconduct, since the Court held that Buksh's recourse was to assert his Fifth Amendment privilege on a question-by-

---

[2] The Court notes that Defendants alleged in the Counterclaim that "[u]nderscoring the significance of the breach and Defendants' concern about the exposure of confidential patient information, SVMC reported the breach to the Vermont Attorney General's Office and included the breach in its annual report to the Vermont Office of Professional Regulation." ECF No. 45 at 24, ¶ 18. There is no mention of a report to federal authorities. Nor was one required, unless Buksh can establish facts to show that Defendants were deliberately withholding certain information as part of a "scheme" to subject him to federal criminal prosecution and thus gain an advantage in this litigation.

question basis.  Defendants also argue that Vermont law does not allow an emotional distress claim based upon conduct in litigation.  ECF No. 118 at 9 (citing *Rainville v. Boxer Blake & Moore PLLC*, No. 2:20-cv-51, 2021 WL 949415, *10 (D. Vt. Mar. 12, 2021)).

As noted above, Buksh alleges two forms of damages: emotional harm after learning of a federal investigation and Defendants' alleged scheme, and financial harm when he had to hire a criminal defense attorney.  It is conceivable that exposure to a federal criminal investigation could cause emotional distress.  As to whether such damages are available in relation to an abuse of process claim, neither party has cited any Vermont authority on point.  The *Rainville* case, cited by Defendants, dealt with a claim of intentional infliction of emotional distress for litigation-related anxiety.  2021 WL 949415, *10.  Buksh cites a host of cases from other jurisdictions allowing mental suffering damages arising from an abuse of process claim.  ECF No. 120 at 8 (citing cases).  In keeping with Buksh's citations, many jurisdictions allow damages for emotional distress arising out of an abuse of process.  *See, e.g., Quick v. EduCap, Inc.*, 318 F. Supp. 3d 121, 139 (D.D.C. 2018) (citing Restatement (Second) of Torts § 670 (1977)); *Millennium Equity Holdings, LLC v. Mahlowitz*, 925 N.E.2d 513, 529 (Mass. 2010); *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747,

11

753 n.3 (N.D. 1989).  Absent controlling authority to the contrary, the Court will allow the abuse of process claim to proceed based upon Buksh's alleged damages.

## Conclusion

For the reasons set forth above, the motion to amend (ECF No. 105) is granted.

DATED at Burlington, in the District of Vermont, this 4th day of June, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge
