UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Shazad Buksh, Krishna Gathani,   )
Gon Saman,                       )
                                 )
              Plaintiffs,         )
                                 )   Case No. 2:21-cv-190
      v.                          )
                                 )
Dr. William Sarchino DPM Foot    )
and Ankle Surgeon, William       )
Sarchino, Southwestern Vermont   )
Medical Center, Southwestern     )
Vermont Health Care,             )
                                 )
              Defendant.          )


**OPINION AND ORDER**

Plaintiffs Shazad Buksh ("Buksh") and Krishna Gathani ("Gathani") brought this case alleging, among other causes, discrimination and retaliation by defendants William Sarchino, Southwestern Vermont Medical Center and Southwestern Vermont Health Care.  To calculate their damages, both plaintiffs disclosed the economic expert witness Stephanie Seguino, Ph.D. ("Seguino").  Pending before the Court are two motions: Defendants' joint motion to exclude the expert testimony of Plaintiff Buksh's economic expert witness (Seguino); and Defendants' joint motion to exclude the expert testimony of Plaintiff Gathani's economic witness—also Seguino.  ECF Nos.

224, 225.  For the reasons set forth below, the Court grants both motions.

## I.    Background

Seguino states that she is "Emerita Professor Economics at the University of Vermont (UVM) with expertise in quantitative data analysis as well as gender and racial inequality and labor market discrimination," who held her position at UVM from 1995 to 2022, as well as the positions of Chair of the Economics Department and Associate Dean of the College of Arts and Sciences.  ECF No. 224-5 at 2.  She received a Ph.D. in Economics from American University in 1994.  *Id.*  Seguino has also "published extensively in peer-reviewed journals," has "two co-authored edited books," serves "as associate editor of two economics journals," and is on the editorial board of a third economics journal.  *Id.*

In this case, Seguino seeks to "provide an estimate of the plaintiffs' loss in earnings resulting from retaliation by Dr. Sarchino and Southwestern Medical Center."  *Id.*  Seguino provided her "Preliminary Expert Report" on November 28, 2022.  ECF No. 224-2.  In this four-page report, Seguino cited to data from the US Bureau of Labor Statistics as well as payscale.com, and concluded that the total income-related damages due in 2022 dollars to Buksh was $33,630, and to Gathani was $157,070.  ECF 224-2 at 5.

**A. Updated Buksh Report**

On December 10, 2024, Seguino signed a new expert report for Buksh.  ECF No. 224-5.  The purpose of this report was to "provide an estimate of the plaintiff's loss in earnings… and the present value of lifetime medical costs associated with bladder cancer treatment."  *Id.* at 2.  Seguino now estimates Buksh's lost income at $1,844,549, and the "present value of projected medical costs for bladder cancer treatment" at $10,054,800.  *Id.* at 3.

Because Buksh alleges he did not receive "the surgical training that would have qualified him as a podiatric surgeon," and because the "[s]alaries of non-surgical podiatrists are much lower than those of surgical podiatrists," Seguino calculates "the differential between Dr. Buksh's income in 2022 and 2023 in his new private practice as a non-surgical podiatrist to the average of the first-year incomes of Drs. Gathani and Saman, also plaintiffs in this case, who practice as surgical podiatrists."  *Id.*  Seguino states that she calculates Buksh's lost income in three parts:

- In Part I, she calculates Buksh's "lost earnings due to the six-month delay in obtaining employment."  ECF No. 224-5 at 4.  Seguino calculated the amount to be $210,121.24 where: "[s]ix months of lost income as a surgical podiatrist is measured as half the average of the surgical podiatrist salaries of Drs. Saman and Gathani."  *Id.*

3

- o Seguino notes that she does not adjust the lost earnings in Part I for inflation, because—where she relies upon Saman and Gathani earnings for 2024—any compensation to plaintiff "would be in 2024 dollars" and therefore "these two adjustments cancel each other out."  ECF No. 224-5 at 4 n.2.

- In Part II, Seguino calculates the "differential between podiatrist earnings and the average of the surgical podiatrist salaries of Drs. Saman and Gathani."  *Id.*  She uses the Bureau of Labor Statistics data (relying on the median) for the podiatrist salary.  She estimates the difference, for 2022 through 2024, to be $810,937.68.

  - o In making this calculation, Seguino notes that she made two conservative choices: first, she uses the Bureau of Labor Statistics salary estimates to calculate the differential even though they are higher than Dr. Buksh's actual earnings from his business; and second, she uses the median instead of the average of those salaries "to lessen the distorting effect of surgical salaries which are at the top end of the scale."  *Id.*

- In Part III, Seguino moves onto projecting Buksh's 2025-2027 differential earnings as a surgical podiatrist, based upon the BLS 2023 median podiatrist salary when compared with the average of Gathani's and Saman's surgical podiatrist salaries.  She notes that it would be appropriate to adjust for the Federal Reserve Bank's estimate of future inflation (approximately 2 percent), as well as for the present value ("based on estimates of future inflation to deflate future dollars to today's dollars"), but that "[b]ecause the estimate of future inflation is 2 percent annually, as noted above, the two required adjustments cancel each other out, and no adjustments for inflation or present value are needed to estimate

lost income for 2025-2027." *Id.* at 4-5. Seguino calculates Buksh's lost income for 2025-2027 as $823,453.94.

## B. Updated Gathani Report

On December 10, 2024, Seguino signed a new expert report for Gathani. ECF No. 225-6. The updated report calculates Gathani's "lost income due to retaliation at SVMC" in the amount of $384,940.96. ECF No. 225-6. In her report, Seguino writes that "Gathani was delayed in attaining the qualifications for licensure as a surgical podiatrist by one year and three months due to the defendants' alleged conduct, which required the plaintiff to pursue his residency in another program." *Id.* at 2. Seguino thus estimates his income losses "using information from his pay stubs and bonus payment from his first employment since completing his residency." *Id.* Accordingly, Seguino calculates Gathani's "lost income"[1] as "1.25 years of salary as a surgical podiatrist."

In Part I, Seguino calculates Gathani's earnings as a first-year surgical podiatrist. Seguino states that "[a]ccording to his employment contract, his annual salary was $200,000 with the possibility of a 10% bonus, should the revenue he generated in his first year be at least three times his

---

[1] As the defendants point out, Seguino states that she calculated lost income but she did not reduce the lost wage amount by Gathani's actual earnings during those years.

annual salary." Gathani "did generate that level of revenue" and thus he was also "paid a bonus of $94,401.40." ECF No. 225-6 at 3. Seguino does not further adjust that number, because, as she explained:

> Dr. Gathani's first year of lost income was in 2022-23. That is, he would have been able to seek employment in 2022, had he been able to complete SVMC's podiatry residency program. The amount Dr. Gathani would have earned as a first-year surgical podiatrist in 2022 would likely have been less than his 2023-2024 salary of $200,000. Because compensation for these lost earnings would be paid in the current year should the plaintiff prevail in this case, however, it is not necessary to deflate that amount to account for a lower average price level in the US in 2022. (Dr. Gathani started his current position in November 2023).

ECF No. 225-6 at 3 n.1.

In Part II, Seguino calculated "Gathani's lost earnings [] based on the additional three months of residency he attributes to the impact of the retaliation at SVMC." *Id.* Seguino calculated this amount as one-quarter of Gathani's increased second year salary ($275,000), with a bonus based upon Gathani's 2023-24 bonus, and she used the present value of these numbers. *Id.*

Seguino set out Gathani's total lost income in a table as follows:

| 2023-24 salary | $200,000.00 |
|---|---|
| 2023-34 bonus | $94,401.40 |
| Three months of 2024-25 salary | $67,401.96 |

6

| Three months of 2024-25 estimated bonus | $23,137.60 |
|---|---|
| Total | $384,940.96 |

## II. Discussion

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). Witnesses may testify as experts if they are "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Rule provides that a witness who is qualified may testify in the form of an opinion or otherwise if the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Pollok*, 139 F.4th 126, 140 (2d Cir. 2025) (internal quotation marks omitted).

### A. Motion to Exclude Seguino's Opinion on Buksh

7

Defendants now move to exclude Seguino's expert testimony, arguing in part that Seguino's opinion is not based upon reliable data and methodology.  The Court agrees.

In Parts I, II, and III of her opinion, Seguino uses only two data points to calculate what Buksh's salary would have been as a surgical podiatrist: the salaries she had access to, those of the other two plaintiffs in this case (Gathani and Saman). Gathani and Saman both had similar backgrounds to Buksh (including that they were all residents of the podiatry program at issue in this case at similar times),[2] and Seguino had access

---

[2] When deposed, Seguino explained that she did not see any rate of error in using only Saman's and Gathani's salaries as a benchmark, because "it's a population, not a sample […] It's two actual salaries."  ECF No. 224-4 at 52.  Her deposition further developed as follows:

Q.  Okay.  What's the difference between a population and a sample?
A.  A population is all of the people that—whose incomes you want to consider.  A sample is a percentage of the population.
Q.  Okay.  Of the total population or the population of the incomes that you want to consider?
A.  Of the incomes you want to consider.
Q.  All right.  So in this case there was a population of how many?
A.  In the case of Gathani and Saman?  Two.
Q.  All right.  Is there, you know, is there any peer-reviewed article or treatise or any kind of publication like that that endorses the methodology that you used in calculating the lost earnings in Exhibit 4?
A.  Every individual case is different.  Certainly the work I do with regard to adjusting for inflation and present value is just textbook.  If you are inquiring about the choice of relying on Gathani and Saman's surgical salaries versus let's say payscale.com, it is just part of the analytical work we do as economists.  We

to their salaries.  Beyond these two points, however, the Court cannot see any reason why the salary of a surgical podiatrist could be based upon these two salaries *alone*, without any other caveats or explanation from Seguino.[3]

If the two data points are considered a sample that is meant to represent surgical podiatrists, then the problem here is not necessarily the use of a small sample of data to estimate the salary of a group; the problem is that no explanation has been given about *why* the sample set of two could be representative of the entire group.  *See, e.g.,* Federal Judicial Center, *Reference Manual on Scientific Evidence*, at 471 (4th Ed. 2025) ("Sample data can be used to describe a population.  The population is the whole class of units that are of interest; the sample is the set of units chosen for detailed study. Inferences from the part to the whole are justified when the sample is representative.").  Defendants point out that, when

---

use our judgment about what is a more reliable estimate. And so in this particular case you could consider it more of a case study than a population—than a survey sample, for example.  And the case study is related to the fact that they all are the same racial, ethnic backgrounds. They are all men.  The began their residency in the same program.  And so there are a number of factors that made them more similar than let's say a random sample of the podiatrist population as a whole.

ECF No. 224-4 at 52-53.

[3] The Defendants point out that Saman's 2023-2024 salary of $546,083.57 "was more than triple the mean and median BLS salaries" for podiatrists, and yet Seguino "did not use any control to determine if Saman's salary was an outlier."

deposed, Seguino said that a sample "has to be at least 20 observations to be reliable"; but that within subgroups it could be smaller, though "truthfully, your results would not—you know, people would frown on small—small—even sample sizes of 20.  You would really—in order to be considered reliable, more is better."  *See* ECF No. 224-3 at 76-77.  If the two data points of the salaries of Gathani and Saman should be considered a population of two rather than a sample (as Seguino clarified in her deposition), there is still no explanation about why this tiny population can be used to calculate what Buksh's salary would have been if he were a surgical podiatrist.

Buksh argues that "there is government data on the earnings of podiatrists but not surgical podiatrists" and thus "the defense criticizes Dr. Seguino for not using a large sample of incomes from surgical podiatrists across the country but does not state that such a resource is available."  ECF No. 239 at 7.  Yet Buksh has the burden to show at least that it is "more likely than not" that his expert's testimony is based on sufficient facts or data, and is the product of reliable principles and methods.  Fed. R. Civ. P. 702.  Moreover, as defendants point out, it is not clear that Seguino herself made an extensive effort to seek out other sources of data.[4]

---

[4] For example, as she stated in her deposition:

Buksh also argues that Seguino's calculations are conservative and they favor the defense because she took the difference between the BLS data for nonsurgical income to calculate the difference between that and surgical income, rather than using Buksh's actual income figures—if she had used his actual income, then "the loss in Part II would have been considerably higher."  ECF No. 239 at 8.  But this argument echoes the problems the defendants pointed out with Seguino's methods—why is the BLS data for nonsurgical income "considerably" higher than Buksh's actual income?  And why didn't Seguino consider that in her calculations—if there is a factor that is depressing Buksh's salary as a non-surgical podiatrist below the average of what other non-surgical

---

Q.  In terms of the decision to use Dr. Gathani and Dr. Saman's earnings as a measure of a surgical podiatrist salary, did you investigate any other sources of data?
A.  No.
Q.  Why not?
A.  I had looked for representative samples on surgical podiatrists.  I didn't find anything that had a—that was transparent about the methodology.
Q.  All right.  And when you did that search or you did that, you know, inquiry, was it through Google?
A.  It was, yes, probably through Google.
Q.  All right.  Any other sources besides Google?
A.  I recall reaching out to the American Medical Association, but not being able to obtain the data.  And that's a vague recollection.  It may not have been the AMA.  It may have been another medical organization.  But I did do some reaching out to see if, in fact, I could get a more specific sample, reliable sample, of surgical podiatrist salaries.
ECF No. 224-4 at 49-50.

podiatrists make, might that same factor mean that he could make considerably less than the population of two she is comparing his salary to?  As the defendants have argued, "Seguino applies Kentucky and Florida incomes to Oregon without any Oregon labor-market study, without controlling for practice type, payer mix, or compensation structure, and without any reasoned basis to conclude that Kentucky/Florida compensation reliably predicts Oregon earnings for Buksh."  ECF No. 256 at 5.

Finally, Buksh argues that, to the extent there may be weakness in Seguino's opinion, disputes over such weaknesses—for example, the variables used—go to the weight of the evidence and should be considered by the jury.  ECF No. 239 at 10 (citing *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 51 (S.D.N.Y. 2016) ("Disputes regarding the proper variables to employ in statistical studies are more properly left for juries to consider and to decide.").  Yet "[t]he law assigns district courts a 'gatekeeping' role in ensuring that expert testimony satisfies the requirements of Rule 702."  *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, 2025 U.S. Dist. LEXIS 17923, at *2 (S.D.N.Y. Jan. 30, 2025) ("A court cannot bypass this gatekeeping responsibility and pass it off to the jury by declaring questions of the

12

sufficiency of an expert's basis, and the application of the expert's methodology, [to be] questions of weight and not admissibility.'" (quoting Fed. R. Evid. 702 Advisory Committee cmt. 2023)).  To satisfy Rule 702, Buksh must demonstrate to the Court that it is more likely than not that Seguino's testimony is based on sufficient facts or data and is the product of reliable principles and methods.  Fed. R. Civ. 702(b); (c).  He has not done so.

Finally, the defendants argue that the section of Seguino's opinion that estimates projected medical costs should be excluded because it relies on a spreadsheet of costs prepared by Buksh himself.  The damages relating to Buksh's alleged bladder cancer are a part of his negligence claim against Sarchino.  As explained in this Court's separate opinion on summary judgment, however, the Court is granting summary judgment to defendants on the negligence claim.  The Court does not, therefore, reach the defendants' arguments on the projected medical costs, and dismisses this portion of the motion as moot.

## B. Motion to Exclude Seguino's Opinion on Gathani

In his opposition to the defendants' motion to exclude Seguino, Gathani drops his claim to the additional three months beyond the one year of lost income.  *See* ECF No. 240 at 2 ("Plaintiff disagrees [with defendants] but to forgo endless litigation that would likely cost more than 3-months of wages,

Dr. Gathani will not be seeking recovery for the three additional months."). Accordingly, in this section the Court only considers Seguino's expert testimony on Gathani's lost income in "Part I" of her report (which makes up around 200 words of content).

As explained above, Seguino bases her estimate of Gathani's lost income for his first year. She did not subtract his actual income in that year (earned in New York, at a new podiatry residency program) from the amount of "lost income." Nor did she adjust the amount at all, for the reasons explained in footnote one of her report. ECF No. 225-6 at 3 n.1. Essentially, then, Seguino has copied the exact income that Gathani earned as a surgical podiatrist in his first year and estimated that this amount is his lost income in this case.

Under Federal Rule of Evidence 702, a court may admit testimony by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" if, *inter alia*, it is more likely than not that the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue." Fed. R. Evid. 702. "Such testimony is appropriate 'when the untrained layman would be unable intelligently to determine the particular issue in the absence of guidance from an expert.'" *United States v. Pollok*, 139 F.4th 126, 139 (2d Cir. 2025) (quoting *United States v.*

*Mejia*, 545 F.3d 179, 189 (2d Cir. 2008)).  Here, the trier of fact is not helped by an expert explaining that Gathani could have earned the exact amount in his first year of practicing as a surgical podiatrist as what he did, in fact, earn in his first year of practicing as a surgical podiatrist.[5]

There is not much analysis that Seguino adds, nor does she use much "methodology" for the Court to evaluate.  In her report, she stated that: "I estimate Dr. Gathani's income losses, using information from his pay stubs and bonus payment from his first employment since completing his residence."  ECF No. 225-6.  As explained above, this means that Seguino copied the number from Gathani's first year of practice.  When asked about her methodology in coming to this calculation—for example, in calculating that the bonus in 2022-2023 would be the same as what he received in 2023-2024, she explained:

> I think I can only explain that by explaining once again the methodology of economists.  We do the best we can with the data that we have.  All of our conclusions, and mine included, are evidence-based.  This is the evidence I have.  I have no evidence of what conditions would've been in 2022.  So that's why

---

[5] Defendants also point out that courts "routinely exclude 'expert' damages testimony where the expert 'engages in arithmetic, not expert analysis.'" ECF No. 257 at 7 (quoting *Golden Unicorn Enters., Inc. v. Audible, Inc.*, 682 F. Supp. 3d 368, 379 (S.D.N.Y. 2023)).  In the expert report presently before the Court, however, Seguino has not even engaged in much arithmetic—for example, she did not subtract Gathani's actual earnings from the "lost" earnings she estimated.

15

> we call them estimates. They are not precise. We do the best we can based on the evidence available. We don't speculate, don't make up stuff, don't assume stuff not in evidence. And so this is the—this is the estimate that I arrived at based on the information of his actual salary and actual bonus. I do not know conditions in 2022.

ECF No. 225-4 at 60. Seguino has based her estimate upon the information available to her—Gathani's income from 2023-2024. However, she has not added any additional analysis, information, or testimony that would assist a jury. Therefore, the Court finds that Seguino's "specialized knowledge" will not "help the trier of fact to understand the evidence or to determine a fact issue," and the Court grants the defendants' motion to exclude her testimony.

### III. Conclusion

For the reasons set forth above, the Court GRANTS both motions to exclude Seguino's testimony. ECF Nos. 224, 225.

DATED at Burlington, in the District of Vermont, this 6th day of July 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge

16